**DUANE MORRIS** LLP
Vanessa C. Hew
Suzan Jo
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000
*Counsel for Defendant*
*The Bon-Ton Stores*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KLAUBER BROTHERS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: 11-CV-4985 |
| v. | ) (PGG) |
| | ) |
| | ) ECF Case |
| RUSSELL-NEWMAN INC., and | ) |
| THE BON-TON STORES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT THE BON-TON STORES, INC.'S
## MOTION TO DISMISS

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..........................................................................................................2

I.      LEGAL STANDARD...................................................................................2

II.     COUNT I OF THE THIRD AMENDED COMPLAINT SHOULD BE
        DISMISSED BECAUSE THE SETTLEMENT AGREEMENT DOES NOT
        IMPOSE JOINT AND SEVERAL LIABILITY FOR ANY PAYMENT
        OBLIGATIONS UPON BON-TON.................................................................4

        A.      Applicable Law ..................................................................................... 4

        B.      The Settlement Agreement Does Not Impose Joint And Several Liability
                With Respect To The Monetary Payments Due Under The Agreement ............... 6

III.    COUNT II OF THE THIRD AMENDED COMPLAINT ALLEGING
        COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED BECAUSE IT
        FAILS TO STATE A VALID CLAIM .............................................................7

        A.      Klauber Has Not Met the Copyright Act's Prerequisite For Bringing  a
                Claim for Copyright Infringement of the 7087 Pattern. ......................... 7

        B.      The Third Amended Complaint Fails to State a Valid Claim For Copyright
                Infringement.......................................................................................... 9

                1.      Klauber Failed To Sufficiently Plead Copying In Its Third Amended
                        Complaint................................................................................... 10

                2.      Klauber Cannot Demonstrate Substantial Similarity............................... 11

IV.     COUNT III OF THE THIRD AMENDED COMPLAINT ALLEGING
        VIOLATION OF THE LANHAM ACT SHOULD BE DISMISSED FOR
        FAILURE TO STATE A VALID CLAIM AND LACK OF STANDING.....................15

        A.      Klauber's Lanham Act Claim Fails under Rule 8(a) ............................ 15

        B.      Klauber Fails to Allege Facts for a Claim under § 43(a)(1)(A)........................... 16

        C.      Klauber Lacks Prudential Standing for a Claim under 43(a)(1)(B)..................... 21

D.      Klauber Fails to Plead Harm under 43(a)(1)(A) or 43(a)(1)(B). ......................... 24

CONCLUSION ........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agencee Fr. Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)............................................20

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394 (S.D.N.Y. 2006) ................................................................................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ Passim

*Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505 (S.D.N.Y. 2008) ................................................................................................20

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) ...........................................5

*Battery Assocs. v. J & B Battery Supply, Inc*., 944 F. Supp. 171 (E.D.N.Y. 1996) ......................4

*Beaudin v. Ben and Jerry's Homemade, Inc.*, 95 F.3d 1 (2d. Cir. 1996) ...............................12, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................3, 17, 19

*Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 U.S. Dist. LEXIS 2783 (S.D.N.Y. Mar. 16, 2001) ...............................................................................................................................11

*Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968 (S.D.N.Y. Feb 25, 1998) ...............................................................................................................................11

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) .......................19

*Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312 (2d Cir. 1982) ....................................21

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998) .... 21-22

*Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ..............................................20

*Davis v. Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) .......................................................................14

*Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106 (2d Cir. 2010) ....................................23

*Folio Impressions v. Byer California*, 937 F.2d 759 (2d Cir. 1991).............................9, 12-13, 15

*Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526 (S.D.N.Y. 2007) ..............................................9-10

*Gottlieb Development LLC v. Paramount Pictures Corp.* 590 F. Supp. 2d 625 (S.D.N.Y. 2008) ...........................................................................................................................3, 11, 14

*L.A. Printex Indus. v. Le Chateau, Inc.*, No. 11 Civ. 4248, 2012 U.S. Dist. LEXIS 40289 (S.D.N.Y. Mar. 23, 2012) .....................................................................................................8

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. N.Y. 1997)................18

*Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ. 15486, 2010 U.S. Dist. LEXIS 33263 (S.D.N.Y. Mar. 26, 2010) ...................................................................................................5

*In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116 (2d Cir. 2007)...............7

*LoCurto v. LoCurto,* No. 07 Civ. 8238, 2008 U.S. Dist. LEXIS 78862 (S.D.N.Y. Sept. 25, 2008) .........................................................................................................................4

*Manik v. Avram*, No. 06 Civ. 477, 2006 U.S. Dist. LEXIS 74550 (S.D.N.Y. Oct. 13, 2006) ...................................................................................................................................15

*Murray Hill Publ'ns. v. ABC Communications, Inc.*, 264 F.3d 622 (6th Cir. 2001) ......................8

*Naked Cowboy v. CBS*, No. 11 Civ. 0942, 2012 U.S. Dist. LEXIS 23211 (S.D.N.Y. Feb. 12, 2012) ..............................................................................................................................3

*National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) ..........18

*NYKCool A.B. v. Pacific Fruit Inc.*, No. 10 Civ. 3867, 2010 U.S. Dist. LEXIS 125177 (S.D.N.Y. Nov. 24, 2010) ..............................................................................................4-5

*Ortho Pharma. Corp. v. Cosprophar, Inc.*, 32 F.3d 690 (2d Cir. 1994)......................................21

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) .................11

*Randa Corp. v. Mulberry Thai Silks, Inc.*, 2000 U.S. Dist. LEXIS 17014 (S.D.N.Y. Nov. 22, 2000) ...............................................................................................................................24

*Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010) ..............................................................7

*Russomanno v. Murphy*, No. 09 Civ. 8806, 2011 U.S. Dist. LEXIS 17248 (S.D.N.Y. Feb. 16, 2011) ...........................................................................................................................3-4

*Salon FAD v. L'Oreal USA, Inc.*, No. 10 Civ. 5063, 2011 U.S. Dist. LEXIS 2233 (S.D.N.Y. Jan. 10, 2011)..............................................................................................................23

*Samara Bros., Inc. v. Walmart Stores, Inc.*, 165 F.3d 120 (2d Cir. 1998)....................................17

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077 (S.D.N.Y. 1993) ...................................................................................................................................19

*Tisi v. Patrick*, 97 F. Supp. 2d 539 (S.D.N.Y. 2000)...................................................................10

*Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643 (2d Cir. 1988)....................................19

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) .........................................................................................................................13-14

*Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205 (U.S. 2000) ......................................................18

*Well-Made Toy Mfg. Corp., v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003) ...........................8

*Wolf v. Wolf*, 59 Fed. App'x. 403 (2d Cir. 2003) ............................................................5

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) ......................................17

**Statutes**

17 U.S.C. § 101 ...........................................................................................................8

17 U.S.C § 411(a) ..................................................................................................... 7-8

§ 43(a)(1)(A), Klauber's Lanham Act ............................................................. 15-17, 20

**Other Authorities**

Fed. R. Civ. P. 8(a) ............................................................................................ 2, 15-16

Fed. R. Civ. P. 12(b)(6).............................................................................................3, 11

*Restatement (Second) of Contracts § 289* .....................................................................4

Defendant, The Bon-Ton Stores, Inc. ("Bon-Ton"), through its attorneys, Duane Morris LLP, respectfully submits this Memorandum of Law in support of its motion to dismiss the Third Amended Complaint filed by plaintiff, Klauber Brothers, Inc. ("Plaintiff" or "Klauber") on February 2, 2012 (the "Third Amended Complaint").

## <u>PRELIMINARY STATEMENT</u>

The legal saga between Bon-Ton and Klauber first began in August 2009, when Klauber filed a lawsuit against Bon-Ton and Bon-Ton's supplier, Russell-Newman, Inc. ("Russell-Newman"), alleging copyright infringement of its lace patterns 7087, 7088, and 7089 (the "Lace Patterns"). *See Klauber Brothers, Inc. v. The Bon Stores [sic], Inc.*, Case No. 09-cv-07201 (PGG) (the "Prior Litigation").  On or about January 22, 2010, Bon-Ton and Russell-Newman entered into a settlement agreement (the "Settlement Agreement") under which Klauber agreed to release Bon-Ton and Russell-Newman from all claims arising out of the alleged infringement of the Lace Patterns.[1]  In the Settlement Agreement, Russell-Newman promised to pay monetary compensation to Klauber for release of the claims against Russell-Newman and Bon-Ton. However, Bon-Ton made no such promise.  In accordance with the Settlement Agreement, on January 22, 2010, Klauber filed a Notice of Voluntary Dismissal, and on January 26, 2010, this Court entered an Order of Dismissal dismissing the Prior Litigation against Bon-Ton and Russell-Newman, *with prejudice.*

Two years later, on or about July 20, 2011, Klauber initiated the instant action by filing the same complaint it filed in the Prior Litigation against Russell-Newman only.  After Klauber was unable to serve the complaint upon Russell-Newman (apparently because Russell-Newman

---

[1]   The Settlement Agreement is attached as exhibit A to the accompanying declaration of R. Terry Parker in Support of Defendant the Bon-Ton Stores, Inc.'s Motion to Dismiss.

is now defunct), Klauber amended its complaint to add Bon-Ton as a party.  However, the First

Amended Complaint failed to assert a valid claim because it sought to resurrect claims that were

released in the Settlement Agreement and dismissed with prejudice in the Prior Litigation.  In a

conference with the parties on December 15, 2011, the Court gave Klauber an opportunity to

correct the deficiencies in its First Amended Complaint.  Klauber then amended its complaint

and filed, but did not serve, a Second Amended Complaint in which it alleged a breach of

contract.  Once again, Bon-Ton brought to Klauber's attention various deficiencies in the Second

Amended Complaint.  Recognizing the deficiencies in its Second Amended Complaint, Klauber

once again withdrew the Second Amended Complaint and filed and served its Third Amended

Complaint, which is the operative complaint here.

Obviously recognizing that payment obligations under the Settlement Agreement ran

only to Russell-Newman, Klauber initially named only Russell-Newman in the instant action.

When Klauber learned that Russell-Newman was defunct and would not be able to satisfy its

payment obligation under the Settlement Agreement, Klauber, in search of a deep pocket and an

easy payday, concocted a new complaint alleging baseless claims of joint and several liability,

copyright infringement and Lanham Act violations against Bon-Ton.  However, these claims are

without any legal or factual basis.  Accordingly, Klauber's Third Amended Complaint fails to

state a claim upon which relief may be granted, and therefore, should be dismissed.

## ARGUMENT

## I.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a).  The Supreme Court has interpreted Rule 8(a)'s pleading standard to require that a

complaint contain "enough facts to state a claim to relief that is *plausible on its face*."  *See Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (confirming that *Twombly* applies "in all civil actions"); *Gottlieb Development LLC v. Paramount Pictures Corp.* 590 F. Supp. 2d 625, 630-631 (S.D.N.Y. 2008) (applying the *Twombly* pleading standard to a copyright infringement case); *see also Naked Cowboy v. CBS*, No. 11 Civ. 0942, 2012 U.S. Dist. LEXIS 23211, at *6 (S.D.N.Y. Feb. 12, 2012) (same).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must articulate sufficient factual allegations 'to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)'" *Naked Cowboy*, 2012 U.S. Dist. LEXIS 23211 at *6 (quoting *Twombly*, 550 U.S. 544 at 555).  Indeed, the *Twombly* pleading standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554.  "Bald conclusions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not defeat the motion." *Gottlieb*, 590 F. Supp. 2d at 631 (internal quotes omitted).  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Pleadings that "are no more than conclusions[] are not entitled to the assumption of truth." *Id.*

In considering a Rule 12(b)(6) motion, the court should "consider assertions made within the four corners of the complaint itself," *see Russomanno v. Murphy*, No. 09 Civ. 8806, 2011 U.S. Dist. LEXIS 17248, at *7 (S.D.N.Y. Feb. 16, 2011) (internal quotes omitted), and "any written instrument attached to the Complaint as an exhibit or any statement or documents

incorporated in the complaint by reference." *Id.*   "[E]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at *8 (internal quotes omitted).   "Finally, a court may consider matters of which judicial notice may be taken." *Id.* (internal quotes omitted).

## II.   COUNT I OF THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE SETTLEMENT AGREEMENT DOES NOT IMPOSE JOINT AND SEVERAL LIABILITY FOR ANY PAYMENT OBLIGATIONS UPON BON-TON

### A.   Applicable Law

Under New York law, joint and several liability may arise when two or more parties co-sign a contract. *See, e.g.*, *Battery Assocs. v. J & B Battery Supply, Inc.*, 944 F. Supp. 171, 178 (E.D.N.Y. 1996).   A plaintiff may recover the full amount of damages from either party if joint liability is established. *NYKCool A.B. v. Pacific Fruit Inc.*, No. 10 Civ. 3867, 2010 U.S. Dist. LEXIS 125177, at *42 (S.D.N.Y. Nov. 24, 2010); *see also LoCurto v. LoCurto,* No. 07 Civ. 8238, 2008 U.S. Dist. LEXIS 78862, at *20 (S.D.N.Y. Sept. 25, 2008) (where obligors are jointly and severally liable, "the plaintiff can recover the full amount of the damages to which he is entitled from any one of the joint obligors").

Joint and several liability is established "'where two or more parties to a contract promise the *same performance* to the same *promisee* they incur only a joint duty unless the contrary is stated, or unless the terms of the promise or the extrinsic circumstances indicate an intention on their part to be bound severally or jointly and severally.'" *Battery Assoc.,* 994 F. Supp. at 178 (emphasis added) (quoting *Marine Trust Co. v. Richardson,* 12 N.Y.S.2d 834, 836 (Sup. Ct. Erie Cty. 1939)); *see also Restatement (Second) of Contracts* § 289 (a joint obligation arises "[w]here two or more parties to a contract promise the *same performance* to the *same promisee*, each is

4

bound for the whole performance thereof, whether his duty is joint, several, or joint and several." (emphasis added)).

However, where "the individual responsibility of each actor is defined by the contract," joint and several liability does not necessarily result. *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir. 2000). Thus, contract rights or duties are joint, several, or joint and several only where the parties so intend. *See NYKCool*, 2010 U.S. Dist. LEXIS 125177 at *43 (quoting 12 Williston on Contracts § 36:2 (4th ed. 2010) and citing 9 Corbin on Contracts § 52.4 (rev. ed. 2007) (joint and several liability is found only where "the promisors so express themselves to lead the promisee reasonably to understand that each promises the whole compensation, they are bound accordingly.")).

To determine the parties' intent, "a court must look first to the plain language of the agreement itself." *Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ. 15486, 2010 U.S. Dist. LEXIS 33263, at *25 (S.D.N.Y. Mar. 26, 2010). The parties' obligations and liabilities are defined by the agreement's terms. Parties to a settlement agreement may not be liable beyond the extent of the agreement's terms. Thus, the court cannot "impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Wolf v. Wolf*, 59 Fed. App'x. 403, 405 (2d Cir. 2003). "When the agreement is complete on its face and appears to set forth the contracting parties' intent clearly and unambiguously, the parol-evidence rule precludes either party from introducing extrinsic evidence to contradict the intention that is manifest in the agreement." *Id.*

**B.**     **The Settlement Agreement Does Not Impose Joint And Several Liability With Respect To The Monetary Payments Due Under The Agreement**

Klauber's breach of contract claim alleges the following:

- In January 2010, Klauber and Defendants entered into the Agreement . . . in partial consideration for which the parties agreed to and this court dismissed the Litigation with prejudice.  (3d Am. Compl. ¶ 15)

- Under the terms of the Settlement Agreement, Defendants agreed to pay Klauber an amount of money, in the form of an initial payment with further payments to be made over a period of time.  (3d Am. Compl. ¶ 16)

- Despite having demanded the same, Klauber has not received the further payments to which Defendants agreed in accordance with the terms of the Settlement Agreement.  (3d Am. Compl. ¶ 18)

- By reason of their failure to pay Klauber the amount agreed in accordance with the terms of the Settlement Agreement, Defendants have breached, and are jointly and severally liable for breaching the Settlement Agreement.  (3d Am. Compl. ¶ 19)

- As a result of such breach by Defendants, Klauber has suffered actual damages . . . (3d Am. Compl. ¶ 20)

In the Third Amended Complaint, Plaintiff completely mischaracterizes the obligations of the parties under the Settlement Agreement.  Significantly, the Agreement does not impose any obligation upon Bon-Ton to make any payments to Klauber.  Indeed, the Agreement is unequivocal that payments to Klauber were to be made solely by Russell-Newman.  The Agreement states in relevant part that "*Russell-Newman* agrees to make an Initial Payment to Klauber in the amount of $[ ]" and

> [i]n addition to the Initial Payment referred to in the immediately preceding paragraph, *Russell-Newman* agrees to guarantee to Klauber an additional value of $[ ] ("Additional Obligation") by itself purchasing or by directing its manufacturing contractors who fill *Russell-Newman* orders for products using lace to purchase lace from Klauber . . . . with 5% of the purchase price to be credited toward *Russell-Newman's* Additional Obligation . . . .

(Settlement Agreement ¶¶ 6,7) (emphasis added).  The Settlement Agreement also stipulated a schedule according to which the orders were to be placed by Russell-Newman, and the manner in which Russell-Newman's Additional Obligation would be satisfied.  (Settlement Agreement ¶ 7(a)-(d)).  Nowhere did the Settlement Agreement impose any obligation upon Bon-Ton to make any payments to, or place any orders with, Klauber.  Nor did the Settlement Agreement provide that Russell-Newman and Bon-Ton were to be jointly and severally liable for any monetary payments.

In light of the express language of the Settlement Agreement, the only reasonable interpretation of the plain language of paragraphs 6 and 7 is that Russell-Newman–and not Bon-Ton–is liable for the Initial Payment and the Additional Obligation.  Any other interpretation of the Settlement Agreement is foundationless.  Accordingly, Count I of the Third Amended Complaint should be dismissed *vis-à-vis* Bon-Ton.

## III.   COUNT II OF THE THIRD AMENDED COMPLAINT ALLEGING COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A VALID CLAIM

### A.   Klauber Has Not Met the Copyright Act's Prerequisite For Bringing a Claim for Copyright Infringement of the 7087 Pattern

Section 411(a) of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made . . . ."  17 U.S.C § 411(a).  Countless cases have dismissed copyright infringement actions under 17 U.S.C. § 411(a) for lack of a registration.  *See, e.g., In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 112 (2d Cir. 2007).  In 2010, the Supreme Court in *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1244-48 (2010), recognizing that there was confusion around § 411(a) and its legislative history, decided that registration was a claim processing rule as opposed to a jurisdictional limitation.  However, the

bottom line of those prior decisions remains the same—a copyright infringement suit cannot be brought without a registration. *See L.A. Printex Indus. v. Le Chateau, Inc.*, No. 11 Civ. 4248, 2012 U.S. Dist. LEXIS 40289, at *9 n.4 (S.D.N.Y. Mar. 23, 2012) ("The Supreme Court has held that, while § 411(a)'s registration requirement 'does not restrict a federal court's subject-matter jurisdiction,' it is still 'a precondition to filing a claim.'") (quoting *Reed Elsevier*, 130 S. Ct. at 1241 (2010)); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ. Co.*, No. 09 CV 2669, 2012 U.S. Dist. LEXIS 42791, at *16 (S.D.N.Y. Mar. 26, 2012) ("It remains the law in this Circuit that § 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed.").

Moreover, in the case of a derivative work,[2] the Second Circuit has held that "section 411(a) bar[s] the district court from considering whether th[e] copyright [in an unregistered derivative work] had been infringed . . . ." *Well-Made Toy Mfg. Corp., v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003); *Murray Hill Publ'ns. v. ABC Communications, Inc.*, 264 F.3d 622, 632 (6th Cir. 2001) ("Because a derivative work is cumulative of the earlier work, it is logical that the registration of the derivative work would relate back to include the original work, while registration of the original material would not carry forward to new, derivative material."). While a plaintiff may "maintain an action for infringement based on defendants' infringement of the pre-existing work[,]" *Well-Made*, 354 F.3d at 116, "[i]n considering such a claim, the Court must compare the allegedly infringing work with the [r]egistered work, and not the [u]nregistered [work]." *Lewinson*, 659 F. Supp. 2d at 564.

---

[2]   A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . [including a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship."  17 U.S.C. § 101.

Count II of the Third Amended Complaint purports to allege a claim for copyright infringement.  Count II of the Third Amended Complaint, however, does not state which of the three Lace Patterns (7087, 7088, or 7089) Bon-Ton allegedly infringed, but instead states generally that "Bon-Ton infringed Klauber's copyrights in such fabric designs" with the Bon-Ton Garments which Klauber alleges are represented in Exhibit G to the Third Amended Complaint (the "Bon-Ton Garment").  Based on the well-settled law, to the extent that Klauber is trying to claim copyright infringement of Lace Pattern No. 7087, the claim must be dismissed because Lace Pattern No. 7087 was not registered with the United States Copyright Office. Indeed, in paragraph 10 of the Third Amended Complaint, Klauber admits that only Lace Patterns 7088 and 7089 are registered, and alleges in a conclusory manner that 7087 is a derivative of 7088 and 7089.  Assuming, *arguendo*, that 7087 is a derivative work of 7088 and 7089, it is still an unregistered derivative work, and therefore, this Court is barred from considering whether Klauber's copyright in 7087 was infringed.  Accordingly, this claim must be dismissed.

**B.   The Third Amended Complaint Fails to State a Valid Claim For Copyright Infringement**

"[T]o establish a copyright infringement cause of action, a plaintiff must show copyright ownership and unauthorized copying by defendants."  *Folio Impressions v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991).  "To demonstrate unauthorized copying, the plaintiff must first show that his work was actually copied; second he must establish substantial similarity or that the copying amounts to an improper or unlawful appropriation, i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than *de minimis*."  *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) (quoting

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir.

2003).

For the first element of unauthorized copying, "[s]ince direct evidence of copying is

seldom available, copying may be inferred where a plaintiff establishes that the defendant had

access to the copyrighted work and that substantial similarities[3] exist as to protectible material in

the two works." *Tisi v. Patrick*, 97 F. Supp. 2d 539, 546 (S.D.N.Y. 2000) (internal quotations

omitted) (citations omitted).  "In the alternative, if the two works are so strikingly similar as to

preclude the possibility of independent creation, copying may be proved without a showing of

access." *Id.*

"Once copying has been shown, a plaintiff must still demonstrate 'substantial similarity'

between the defendant's work and the protectible elements of plaintiff's work, because 'not all

copying results in copyright infringement.'" *Gal*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007)

(quoting *Boisson v. Banian*, *Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).

### 1.     Klauber Failed To Sufficiently Plead Copying In Its Third Amended Complaint

As discussed above, a critical requirement in establishing actionable copying is to

demonstrate that the defendant had access to the copyrighted work and that there is a probative

similarity between the allegedly unauthorized work and the copyrighted work or that the two

works are strikingly similar.  Klauber fails to plead a threshold requirement to maintain a

copyright infringement action.  Its Third Amended Complaint does not contain any allegations

that Bon-Ton had access to the Lace Patterns, nor that the works at issue are substantially or

---

[3]     The court in *Gal* has explained that "[t]he presence of a 'substantial similarity' standard in two parts of the test (i.e. as a requirement for demonstrating copying and subsequently as a requirement for demonstrating unlawful copying) has caused some confusion"  and "to clarify this confusion, we have noted that the term 'probative similarity' should be used when referring to the initial burden of proving copying by establishing access and/or similarities. After a plaintiff has proved copying, he or she must then show that the copying was unlawful by establishing 'substantial similarity' between the works at issue." *Id.*

strikingly similar.  Accordingly, Klauber's copyright infringement claim should be dismissed for failure to adequately plead an essential element, copying.  Klauber's continued, sloppy pleading should not be rewarded.

### 2.    Klauber Cannot Demonstrate Substantial Similarity

Even if the plaintiff can demonstrate copying, plaintiff "must establish substantial similarity or that the copying amounts to an improper or unlawful appropriation, i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than *de minimis*." *Gal*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007).

The Second Circuit has held that the question of substantial similarity can be resolved on a motion to dismiss pursuant to Rule 12(b)(6).  *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *see also Gottlieb,* 590 F. Supp. 2d. at 632 (dismissing copyright infringement action because plaintiff failed to establish substantial similarity); *Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 U.S. Dist. LEXIS 2783, at *9 (S.D.N.Y. Mar. 16, 2001) (dismissing plaintiff's claim where no reasonable jury could find substantial similarity or that similarity pertains only to unprotected aspects of work); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1998 U.S. Dist. LEXIS 1968, at *12 (S.D.N.Y. Feb 25, 1998) (same).  Specifically:

> [w]here . . . the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation.  If, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law … the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief.

*Gaito*, 602 F.3d at 64 (internal quotes omitted).

It is axiomatic that, "the scope of copyright protection . . . extend[s] only to the work's particular expression of an idea, not to the idea itself." *Folio Impressions*, 937 F.2d at 765 (*citing Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 489 (2d Cir. 1960)).  In *Folio Impressions*, the Second Circuit was called upon to determine whether two fabric designs were substantially similar.  The original fabric (Pattern # 1365) contained a copyrighted rose design (the "Folio Rose") arranged in "straight lines and turned so that the roses faced in various directions."  *Folio Impressions*, 937 F.2d at 764.  Finding that "an average lay observer would not recognize the alleged copy as having been appropriated from the copyrighted work," the court observed that:

> [a]lthough the roses in both designs are placed against the background in a similar straight line pattern, the roses themselves are not substantially similar . . . each of the roses in Pattern # 1365 is identical, while the roses in the [allegedly infringing] pattern differ from each other in their details and nuances. The [infringing roses] appear to be in soft focus and the Folio Rose has a sharper, clearer image. Moreover . . . by the rose's very nature one artist's rendering of it will closely resemble another artist's work.

*Id.* at 766.  Indeed, the Second Circuit has cautioned that "it is doubtful whether taking a pattern that appears in nature and rendering it in a variety of minute variations that inevitably result from hand-painting satisfies even the minimal originality requirement of copyright."  *Beaudin v. Ben and Jerry's Homemade, Inc.*, 95 F.3d 1, 1 (2d. Cir. 1996).

Here, the appropriate comparison is between the Bon-Ton Garment, a picture of which is attached as Exhibit G of the Third Amended Complaint, and the 7088 and 7089 patterns, copies of which are attached as Exhibits B and C to the Third Amended Complaint. [4]  A review of these generic floral patterns shows that there is no substantial similarity between the lace pattern in the

---

[4]    As discussed herein, Lace Pattern 7087 cannot form the basis for a copyright infringement claim because it was not registered with the Copyright Office.  Therefore, the Court should not consider Lace Pattern 7087 in its determination of this Motion.  *See Lewinson*, 659 F.Supp. 2d at 564.

Bon-Ton Garment and Klauber's 7088 or 7089 patterns. Indeed, while the patterns substantially differ in detail and nuance, any similarities between the patterns merely exist because the works represent the same subject matter, i.e., roses and leaves.

As the Second Circuit held in *Folio Impressions*, the "idea" of roses and leaves arranged in a curved or lace pattern consisting of roses, leaves and stems (all of which occur commonly in nature) is not protected. *See Folio Impressions*, 937 F.3d at 766. Instead, it is only the expression of that idea which is protected under copyright law. *Id.*; *see also Tufenkian*, 338 F.3d at 132, n.4.

When comparing the Lace Patterns with the lace on the Bon-Ton Garment, it is clear that the lace on the Bon-Ton Garment was not appropriated from the Klauber Lace Patterns. Specifically, the roses on the Klauber Lace Patterns are smaller, more elongated and more bud-like than the roses on the lace of the Bon-Ton Garment, which are rounded and appear more like roses in full bloom. Additionally, the roses in the Klauber Lace Patterns consist of two base petals which appear to form a cup at the bottom with two top petals, whereas the roses in the the Bon-Ton Garment have base petals that look like flat leaves and have four top petals.

Additionally the leaves in the Klauber Lace Patterns are ornate, multi-pronged leaves of varying shapes and sizes interspersed with tear-drop shaped leaves. In the Bon-Ton Garment, the leaves are simple single-pronged leaves of uniform shape and size. Finally, the stems in the Klauber Lace Patterns are in an exaggerated "C" shape, are of graduated thickness, with the thinnest part attached to the rose and increasing in thickness. The stems in the Bon-Ton Garment are upright with a slight curve at the end, and are of even thickness throughout the entire length of the stem. Finally, unlike in the Klauber Lace Patterns, the rose in the Bon-Ton Garment is

free floating and not attached to the stem.  The chart below summarizes the distinguishing

features in the lace patterns at issue:

| | Klauber Lace Patterns | Bon-Ton Garment |
|---|---|---|
| Roses | <ul><li>Small</li><li>Elongated</li><li>Bud-like</li><li>Base petals form a cup</li><li>Two top petals</li><li>Attached to stem</li></ul> | <ul><li>Larger</li><li>Rounded</li><li>Full bloom</li><li>Flat-leafed base petals</li><li>Four top petals</li><li>Free floating; not attached to stem</li></ul> |
| Leaves | <ul><li>Ornate, multi-pronged</li><li>Varying shapes and sizes</li><li>Interspersed with tear-drop shaped leaves</li></ul> | <ul><li>Simple single-pronged</li><li>Uniform shape and size</li></ul> |
| Stem | <ul><li>"C" shaped</li><li>Graduated thickness</li><li>Thinnest part attached to rose</li></ul> | <ul><li>Upright with a slight curve at the end</li><li>Even thickness</li></ul> |

Accordingly, there is no substantial similarity and Count II should be dismissed.

Finally, even if there was copying of a protected expression, the copying is not actionable

if the amount that was copied was *de minimis.  See Tufenkian*, 338 F.3d at 132; *see also*

Ringgold v. Black Entertainment TV, 126 F.3d 70, 74 (2d Cir. N.Y. 1997) ("The legal maxim

'de minimis non curat lex' (sometimes rendered, 'the law does not concern itself with trifles')

insulates from liability those who cause insignificant violations of the rights of others."); *Davis v.*

*Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001) (where unauthorized copying is trivial, "the law will

not impose legal consequences").  In determining whether works are substantially similar, "a

court must decide 'whether the average lay observer would recognize the challenged material as

having been copied from the copyrighted work,'" *Gottlieb*, 590 F. Supp. 2d at 631 (quoting

*Crane v. Poetic Prods.*, 549 F. Supp. 2d 566, 569 (S.D.N.Y. 2008)).

14

Based upon the comparison of the lace patterns at issue, any copying of any protectable element is *de minimis*, and therefore, not actionable.  Any similarities in the appearance of the Bon-Ton Garment and the Klauber Lace Patterns is the result of the natural similarity that occurs in artistic renderings of roses, leaves and stems.  *See, e.g., Folio Impressions,* 937 F.2d at 766; *Beaudin*, 95 F.3d at 1.  Accordingly, Klauber cannot maintain an action for copyright infringement and Count II of the Third Amended Complaint should be dismissed.

## IV.   COUNT III OF THE THIRD AMENDED COMPLAINT ALLEGING VIOLATION OF THE LANHAM ACT SHOULD BE DISMISSED FOR FAILURE TO STATE A VALID CLAIM AND LACK OF STANDING

### A.   Klauber's Lanham Act Claim Fails under Rule 8(a)

As an initial matter, Klauber's Lanham Act claim is too vague to allow Bon-Ton to respond.   The Supreme Court has made it clear that Rule 8(a) requires a "showing," not a mere allegation, of entitlement to relief.  *Iqbal*, 556 U.S. at 679 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown that the pleader is entitled to relief") (citations omitted).  The purpose of Rule 8(a)(2) "is to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial."  *Manik v. Avram*, No. 06 Civ. 477, 2006 U.S. Dist. LEXIS 74550, at *8 (S.D.N.Y. Oct. 13, 2006).

Klauber claims relief under § 43(a) of the Lanham Act.  However, because Klauber alleges little more than the legal elements of § 43(a), it is not clear from the pleadings whether relief is sought for false designation of origin under § 43(a)(1)(A) or false advertising under §

43(a)(1)(B).  Third Amended Complaint at ¶ 29.  Klauber's Lanham Act claim alleges the

following:[5]

- Bon-Ton offered for sale and displayed on its website its RELATIVITY undergarments portions of which contained an alleged copy of Klauber's Lace Pattern No. 7087.  (3d Am. Compl. at ¶ 32)
- Klauber ordered from Bon-Ton several examples of RELATIVITY undergarments and received undergarments that did not contain Klauber's Pattern No. 7087.  (3d Am. Compl. at ¶ 33)
- Bon-Ton's showing in commerce of its RELATIVITY undergarments with copies of Lace Pattern No. 7087 and supplying undergarments with a different lace pattern "comprises the use of symbols tending to falsely describe or represent Bon-Ton's product as Klauber's product or as a product bearing lace which is somehow sponsored by or approved by Klauber and constitutes a false designation of origin and a false description and representation of Bon-Ton's product."  (3d Am. Compl. at ¶ 34)
- The above conduct had the effect causing confusion.  (Third Am. Compl. at ¶ 35)
- Klauber "believes" it will be damaged by the above conduct.  (3d Am. Compl. at ¶ 37)
- Klauber has been damages in an amount believed to exceed $75,000.  (3d Am. Compl. at ¶ 39)

The plain language of the statute makes clear, a false designation of origin claim under §

43(a)(1)(A) is very different from a false advertising claim under § 43(a)(1)(B).  Without

knowing which theory applies, Bon-Ton does not have proper notice under Rule 8(a). Klauber's

complaint fails on this ground alone.  Nevertheless, even accepting Klauber's alleged facts as

true, there is simply no relief under either § 43(a)(1)(A) or § 43(a)(1)(B).

### B.      Klauber Fails to Allege Facts for a Claim under § 43(a)(1)(A)

To the extent that Klauber alleges a false designation of origin claim under § 43(a)(1)(A),

Klauber's Lanham Act claim fails.  The Supreme Court has held that "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678. (internal quotations omitted) (citations omitted).  Accordingly, courts

---

[5]      It unclear from the pleadings whether Klauber is claiming Lanham Act protection for each of Lace Patterns, or solely for Lace Pattern No. 7087.  Bon-Ton understands Klauber to limited its Lanham Act claim to Lace Pattern No. 7087.  However, its Lanham Act claim fails equally for each of the Lace Patterns.

determine the sufficiency of a claim by first weeding out the legal conclusions, which are not

entitled to the presumption of truth, and then evaluating the facts, which are, to determine

whether or not they plausibly give rise to an entitlement to relief.  *Id.* at 679  ("a court

considering a motion to dismiss can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth.").

Klauber offers mere legal conclusions that Bon-Ton's conduct "constitutes false

designation of origin and a false description and misrepresentation of Bon-Ton's product" by

"falsely designating Bon-Ton's product and causing confusion, mistake and deception in the minds

of the purchasing public as to the identity and source of the lace in Bon-Ton's product . . . ."  Third

Amended Complaint at ¶ ¶ 34-35.  Under both *Iqbal* and *Twombly*, these are mere legal

conclusions that need not be accepted as true.  Klauber offers no facts to support these conclusory

allegations.  Indeed, the facts that are alleged demonstrate that there is simply no claim under

§ 43(a)(1)(A).

Courts typically acknowledge that garment designs are trade dress, s*ee, e.g., Knitwaves,

Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1009 (2d Cir. 1995) (holding sweater designs should not be

analyzed as trademarks but as trade dress); *Samara Bros., Inc. v. Walmart Stores, Inc.*, 165 F.3d

120, (2d Cir. 1998) (reversed on other grounds) (holding garment designs in children's line of

clothes were trade dress); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co*., 292 F.

Supp. 2d 535, 540 (S.D.N.Y. 2003) (applying trade dress analysis to pants design).  "Section

43(a) is construed to protect not just word marks or symbol marks, but also trade dress." *Yurman

Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001).[6]  The Supreme Court has held, "trade

dress constitutes a 'symbol' or 'device' for purposes of [the Lanham Act]" but "a product's

---

[6]   Klauber never alleges that its Lace Patterns or Lace Pattern 7087 are registered trade dress.  Thus, Klauber's
      Lace Patterns and Lace Pattern 7087 shall be treated as unregistered for the purposes of this motion.

design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210, 216 (U.S. 2000).

"The Second Circuit has enunciated the four pleading requirements for a claim of trade dress infringement involving the appearance of a product under section 43(a) of the Lanham Act: (1) plaintiff must allege the claimed trade dress is non-functional; (2) plaintiff must allege the claimed trade dress has secondary meaning; (3) plaintiff must allege there is a  likelihood of confusion between the plaintiff's goods and the defendant's; and (4) plaintiff must offer a precise expression of the character and scope of the claimed trade dress."  *National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556, 560-61 (S.D.N.Y. 2009) (internal quotations omitted) (citations omitted) (dismissing with prejudice plaintiff's 43(a) claim where trade dress was not defined).  A plaintiff must articulate with specificity the design elements of the trade dress because "[w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market."  *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. N.Y. 1997).

Klauber's Lanham Act claim fails on each level.  First, at no point in its complaint does Klauber articulate with specificity its trade dress.  Nor does Klauber claim that its design is non-functional.[7]  Tellingly, Klauber also fails to make any reference to secondary meaning.

Klauber's failure to plead any facts alleging that the Lace Patterns have acquired secondary meaning is no accident.  Secondary meaning is the "power of a name or other

---

[7]     The functionality of Klauber's design would refer to the aesthetic function the design.  *See Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990) ("Where an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection.").  Because the floral design is merely an ornamental function of the lace, Klauber cannot truthfully plead that its design is non-functional.

configuration to symbolize a particular business, product or company." *Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 647 (2d Cir. 1988).  The Second Circuit has stated that "to establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992).  Secondary meaning "entails vigorous evidentiary requirements" such as "(1) advertising expenditures; (2) consumer studies linking the name to a source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1084 (S.D.N.Y. 1993).  Klauber pleads none of these facts.  Although Klauber claims that its Lace Pattern 7087 is a symbol, as a feint attempt to imply that it is trade dress, this conclusory allegation is insufficient.  Klauber must define the scope of what is claimed as a trade dress and must plead that its Lace Pattern 7087, or its other Lace Patterns, have secondary meaning and are non-functional.

Moreover, Klauber fails to allege any facts to establish that Bon-Ton's supposed use of the Lace Patterns is likely to cause consumer confusion as to source.  While Klauber does offer the legal conclusion that the consuming public is likely to be confused, *see* 3d Am. Compl. at ¶¶ 37, as in *Iqbal* and *Twombly*, these legal conclusions do not warrant the presumption of truth.

Indeed, the facts that are pled by Klauber show that consumer confusion as to source is simply implausible.  Klauber alleges that it originated the design for the Lace Pattern 7087 but it never alleges that the Lace Pattern 7087, or its other lace patterns, signify to consumers a single source of origin for Klauber's goods.  Nor can it truthfully make such an allegation.  Klauber is not a source of the goods at issue, ladies' under garments, but is a source of one element that

Klauber's customers use in the manufacture of these undergarments which are then sold under Klauber's *customers' brands*.  Thus, Klauber is incapable of offering any facts demonstrating that consumers identify the Lace Pattern 7087 or its other lace patterns at issue as a symbol of the source or origin of Klauber's products.

No matter how Klauber labels its § 43(a)(1)(A) claim, it fails in the light of the Supreme Court's ruling in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  *See Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2006) (holding a false designation of origin claim under § 43(a)(1)(A) of the Lanham Act is foreclosed by the Supreme Court's decision in *Dastar*); *Agencee Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) ("while *Dastar* concerned a misrepresentation of origin claim, courts have recognized that its reasoning applies with equal force to bar claims, also brought under § 43(a)(1)(A), for false representation of 'affiliation'").

In *Dastar*, Twentieth Century Fox Film Corp. ("Fox"), which owned the copyright to the work at issue in that case before it expired, brought a claim against Dastar for false designation of origin.  *Id*. at 25.  The Supreme Court held that, "as used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id*. at 32.  "[T]he 'origin' of goods is the manufacturer of the goods . . . as opposed to its author."  *Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 511 (S.D.N.Y. 2008).[8]

As in *Dastar*, Klauber does not allege misrepresentation of the origin or producer of the

---

[8]   While *Dastar* concerned a copyrighted work that had fallen into the public domain, courts have since held that *Dastar* applies to claims concerning copyrighted works.  *See Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2007) ("*Dastar* holds that the fact that copyright law covers communicative products  prevents these products from being accorded special treatment under the Lanham Act regardless of whether a viable copyright claim exists in a given case.") (internal quotation omitted) (citations omitted).

undergarments featuring the Lace Patterns—but of the creator of one element of the undergarments' Lace Patterns.  Accordingly, Klauber's alleged facts do not constitute a Lanham Act violation because, as used in the Lanham Act, the phrase "origin of goods" refers to the producer of the tangible good, not the originator of one of the so called ideas that the goods embody or feature.

### C.     Klauber Lacks Prudential Standing for a Claim under 43(a)(1)(B)

To the extent that Klauber's Lanham Act claim alleges false advertising under § 43(a)(1)(B), the facts alleged in the Third Amended Complaint demonstrate that Klauber lacks prudential standing.  The courts on this point are clear: to "establish standing to sue under [the Lanham Act], a plaintiff must demonstrate a 'reasonable interest to be protected' . . . and a 'reasonable basis' for believing that this interest is likely to be damaged by the false or misleading advertising." *Ortho Pharma. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) (quoting *PPX Enters., Inc v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984) and *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982).  The "'reasonable basis prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising." *Ortho Pharma.*, 32 F.3d at 694.  In addition, the Second Circuit has held that "the likelihood of injury and causation will not be presumed, but must be demonstrated in some manner."  *Id.*

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998), is instructive.  In that case, the Third Circuit affirmed the district court's dismissal of the action alleging false advertising because the putative class "did not satisfy the prudential standing requirements implicit in § 43(a) of the Lanham Act."  *Id.* at 223.  The putative class in *Conte Bros.* was made up of retail sellers of engine lubricant that competed with Slick 50, an engine lubricant manufactured by the appellee.  *Id.*  The Third Circuit held that "the focus of the

Lanham Act is on commercial interests that have been harmed by a competitor's false

advertising" and explained:

> [w]hile the Appellants have alleged a commercial interest, they
> have not alleged competitive harm. Nor is there any indication that
> Appellants' good will or reputation have been harmed directly or
> indirectly . . . .  The type of injury suffered by Appellants—loss of
> sales at the retail level because of alleged false advertising—does
> not impact the Appellants' ability to compete; nor does it detract
> from the Appellants' reputation or good will. Therefore, the
> alleged harm is not of the type that Congress sought to redress by
> enacting the Lanham Act.

*Id.* at 234 (internal quotations omitted) (citations omitted).

Indeed, the Third Circuit in *Conte Brothers* cautioned against the very type of claim

asserted by Klauber:

> recognizing the right of every potentially injured party in the
> distribution chain to bring a private damages action would subject
> defendant firms to multiple liability for the same conduct and
> would result in administratively complex damages proceedings.
> Additionally, such a holding could result in an enormous number
> of relatively insignificant cases being litigated in the federal courts.
> If every retailer had a cause of action for false advertising
> regardless of the amount in controversy, regardless of any impact
> on the retailer's ability to compete, regardless of any impact on the
> retailer's good will or reputation, and regardless of the remote
> nature of the injury suffered, the impact on the federal courts could
> be significant. For example, under Appellants' theory, every corner
> grocer in America alleging that his sales of one brand of chocolate
> bars have fallen could bring a federal action against the
> manufacturer of another brand for falsely representing the
> chocolate content of its product. Such an action hardly seems
> befitting of a statute that was designed primarily to resurrect the
> federal tort of unfair competition after it was consigned to the post-
> Erie ashheap.

*Id*.

Klauber's Third Amended Complaint is devoid of any factual allegations as to its interest

in being protected.  Nor does it plead any facts demonstrating injury or causation.  In Count III of

the Third Amended Complaint, Klauber alleges in essence that Bon-Ton engaged in unfair

competition by displaying on its website women's underwear with an alleged copy of Klauber's

Lace Pattern No. 7087 but filling online orders with underwear containing a purportedly different

lace.  *See* Third Amended Complaint at ¶¶ 32-34.  Even accepting the allegations as true, the

allegations do not allege any competive injury to Klauber.  Klauber is alleging injury to the

consumer and not injury to itself.

Additionally, Klauber's legal conclusion that it "*believes* that it will be and has been

damaged by such false description and representation" (3d Am. Compl. ¶  37) (emphasis added)

fails to establish that Klauber has standing to sue under the Lanham Act.  In cases where courts

have found standing, plaintiffs have pled injury and causation with particularity, not mere legal

conclusions.  *See, e.g., Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106, 113 (2d Cir.

2010) (pleading (i) lost sales of genuine name brand jeans to appellee's lower priced counterfeit

jeans because consumers believe that they are purchasing designer jeans at lower prices and (ii)

reputational harm to appellant's stores because customers will believe that appellant is selling

designer jeans at an inflated price); *Salon FAD v. L'Oreal USA, Inc.*, No. 10 Civ. 5063, 2011

U.S. Dist. LEXIS 2233, at *8 (S.D.N.Y. Jan. 10, 2011) (alleging reputational damage and loss of

sales when consumers discover that the products marketed by defendants as 'salon-only' are

available at mass retailers).

Here, Klauber has not pled any particularized injury which was caused by Bon-Ton's

displaying of women's undergarments featuring Bon-Ton's lace patterns.  Specifically, Klauber

has not alleged any competitive disadvantage, loss of sales or reputational injury.  Nor can it.  As

a manufacturer of lace, Klauber cannot establish that it suffers any injury as a result of Bon-

Ton's purposed false representation in connection with the sale of its merchandise.  Given that

Klauber and Bon-Ton are not direct competitors, Klauber has not plead—nor can it truthfully

allege—any facts demonstrating that Bon-Ton's retail sales have affected Klauber's sales of its lace to undergarment manufacturers.  Klauber's subjective belief that it "will be and has been damaged" is insufficient to establish standing, and therefore, Count III of the Third Amended Complaint should be dismissed.

### D.      Klauber Fails to Plead Harm under 43(a)(1)(A) or 43(a)(1)(B).

"To show entitlement to monetary damages under § 43(a), a plaintiff must show an additional element—he or she must show actual damages rather than a mere tendency to be damaged."  *Randa Corp. v. Mulberry Thai Silks, Inc.*, 2000 U.S. Dist. LEXIS 17014, 7-8 (S.D.N.Y. Nov. 22, 2000).  "To do so, the plaintiff must show that he or she suffered actual damages that were causally related to 'actual consumer confusion or deception' of the purchasing public."  *Id*. (quoting *PPX Enters. v. Audiofidelity Enters.*, 818 F.2d 266, 271 (2d Cir. 1987).  Klauber alleges no facts to support the legal conclusion that it has been harmed.  Not one alleged fact references actual damage to Klauber that results from actual consumer confusion or deception of the purchasing public.

## CONCLUSION

Based upon the foregoing, defendant Bon-Ton respectfully requests that the Court dismiss plaintiff Klauber's Third Amended Complaint against Bon-Ton in its entirety, and award to Bon-Ton its attorneys' fees and costs incurred in the defense of this law suit and all such other relief that the Court deems just and proper.  Because Klauber has now filed four complaints in this action—all deficient—Klauber should not be given leave to amend once again.  Such leave, if granted, would significantly prejudice Bon-Ton by wasting time and valuable judicial resources.

Dated:  New York, NY                         DUANE MORRIS LLP
        April 30, 2012

                                             By: /s/_____
                                             Vanessa C. Hew
                                             Suzan Jo
                                             R. Terry Parker
                                             1540 Broadway
                                             New York, NY 10036
                                             (212) 692-1000

                                             *Counsel for defendant*
                                             *The Bon-Ton Stores, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served by electronic mail this 30th day of April, 2012 on the following pursuant to the parties' agreement:

Philip Gottfried, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
E-mail: pgottfried@arelaw.com

/s/ R. Terry Parker
_____

DM1\3280073.4