UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

NEW YORK

------------------------------------------------------------- x

| | |
|---|---|
| KLAUBER BROTHERS INC., <br>               Plaintiff, <br><br> vs. <br><br> RUSSELL-NEWMAN INC. and <br> THE BON-TON STORES, INC., <br>               Defendants. | Civil Action No. 11 CIV 4985 (PGG) <br><br><br> ECF Case |

------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION TO THE
## MOTION TO DISMISS OF DEFENDANT THE BON-TON STORES, INC.

Philip H. Gottfried
(*pgottfried@arelaw.com*)
Marc J. Jason
(*mjason@arelaw.com*)
Holly Pekowsky
(*hpekowsky@arelaw.com*)
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York  10016
(212) 336-8000
Attorneys for Plaintiff

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................................1

II. FACTUAL BACKGROUND .....................................................................................................2

III. LEGAL ARGUMENT ...............................................................................................................5

    A. Standard For Motion To Dismiss ......................................................................................5

    B. Klauber Has Stated A Claim for Breach of Contract .........................................................5

    C. Klauber Has Stated a Claim for Copyright Infringement ...................................................7

        1. Bon-Ton's Argument That The 7087 Design Is Not Registered Is Unavailing ..............7

        2. Access and Substantial Similarity .................................................................................9

    D. Klauber States a Claim for False Advertising ..................................................................11

IV. CONCLUSION .......................................................................................................................13

512010.2

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
   88 F. Supp.2d 226 (S.D.N.Y. 2000) .................................................................................... 10

*Alexander v. Wheeler*,
   407 N.Y.S.2d 319 (N.Y. App. Div. 1978) .............................................................................. 6

*Boisson v. Banian, Ltd.*,
   273 F.3d 262 (2d Cir. 2001) ............................................................................................. 7, 10

*Diamond Dirext, LLC v. Star Diamond Group, Inc.*,
   116 F. Supp.2d 525 (S.D.N.Y. 2000) .................................................................................. 11

*Famous Horse Inc. v. 5th Avenue Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................................ 12

*Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .............................................................................................................. 7

*Folio Impressions v. Byer California*,
   937 F.2d 759 (2d Cir. 1991) ................................................................................................ 10

*Hamil America Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) .................................................................................................. 10

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) .................................................................................................. 5

*LaFaro v. New York Cardiothoracic Group, PLLC*,
   570 F.3d 471 (2d Cir. 2009) .................................................................................................. 5

*Lewinson v. Henry Hold and Co.*,
   LLC, 659 F. Supp. 2d 547 (S.D.N.Y. 2009) .......................................................................... 9

*Mattel, Inc. v. Robarb's, Inc.*,
   139 F. Supp.2d 487 ............................................................................................................... 8

*Mazzola v. Roomster Corp.*,
   2012 U.S. Dist. LEXIS 42123 (S.D.N.Y. Mar. 26, 2012) ..................................................... 5

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir. 1999) ............................................................................................. 8

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
   102 F.3d 660 (2d Cir. 1996) .................................................................................................. 5

*Salon FAD v. L'Oreal USA, Inc.*,
  100 U.S.P.Q.2d (BNA) 1245 (S.D.N.Y. 2011)................................................................12

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
  642 F. Supp. 2d 206 (S.D.N.Y. 2009)..............................................................................8

*Sublime Products, Inc. v. Gerber Products, Inc.*,
  579 F. Supp. 248 (S.D.N.Y. 1984) ................................................................................11

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)..........................................................................................11

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
  354 F. 3d 112 (2d Cir., 2003).........................................................................................9

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ........................................................................................................11

**RULES**

Fed. R. Civ. P. 12(b) (6).............................................................................................................5

Plaintiff Klauber Brothers, Inc. ("Klauber") submits this Memorandum of Law in Opposition to the Motion To Dismiss of Defendant The Bon-Ton Stores, Inc. ("Bon-Ton").

## I. PRELIMINARY STATEMENT

Klauber previously sued Bon-Ton and defendant Russell-Newman, Inc. ("Russell-Newman") (together, "Defendants") in 2009 for infringement of the copyrights in the lace designs also at issue in this case (Klauber design numbers 7087, 7088 and 7089). That prior litigation was resolved by Settlement Agreement[1] and dismissal of the action with prejudice. In consideration for Klauber's dismissal of the action, as well as releases granted to Bon-Ton and Russell-Newman, and grant of a sell-off period to Bon-Ton, Klauber was to receive certain payments from the Defendants. In addition to the payments, after the sell-off period Bon-Ton agreed to cease infringing, or even displaying, Klauber's three lace designs.

The Defendants breached the Settlement Agreement. The required payments were not made to Klauber; and Bon-Ton has continued to sell infringing lace products and also to display infringing lace products on its website while, in part, delivering different products to customers. (Without discovery, Klauber does not know whether Bon-Ton actually has been shipping infringements in addition to displaying them, or whether pictures of the infringements on the Bon-Ton website were only part of a "bait and switch.") Bon-Ton's activity is particularly egregious since it is a knowing and willful repeat offender after having expressly agreed in paragraph 4(f) of the Settlement Agreement not to offer for sale or sell any designs substantially similar to any of the three Klauber designs.

Despite the failure of consideration to Klauber, Bon-Ton seeks to avoid its obligations under the Settlement Agreement, yet expects to reap its benefits by taking advantage of the

---

[1] Attached as Exhibit A to Bon-Ton's Memorandum of Law in support of its motion to dismiss.

release and dismissal. Moreover, for Bon-Ton to trade on Klauber's artistic creations and then pull a "bait and switch" on consumers is unconscionable.

As discussed more fully below, Klauber has sufficiently pled causes of action against Bon-Ton for breach of contract, copyright infringement and unfair competition and false advertising in connection with: (1) Klauber's failure to receive payments under the parties' prior Settlement Agreement; (2) Bon-Ton's offer for sale and sale of lace underwear incorporating Klauber's well-known and copyright-protected lace designs; and (3) Bon-Ton's "bait and switch" advertising, in which it offered for sale lace underwear incorporating Klauber's design, but at least shipped a different underwear to consumers.

Although Klauber strongly believes it has satisfied the notice pleading requirements for its claims, in the event additional allegations are deemed necessary, it is respectfully requested that Klauber be permitted to amend its complaint under Rule 15's liberal standard.

## II.   FACTUAL BACKGROUND

Klauber is a well known designer, manufacturer and seller of original and distinctive knit fabrics, which has been in business since 1859. Klauber has earned a well-deserved and enviable reputation in the trade for providing unique and original fabric designs of high quality.

In 1991, Klauber co-authored lace designs which it designated as design numbers 7087, 7088 and 7089. Copies of representations of these designs are annexed to the Third Amended Complaint as Exhibits A, B and C, respectively. The designs were published in 1991. Design 7088 is the subject of U.S. Copyright Registration No. VA 479 838; and design 7089 is the subject of U.S. Copyright Registration No. VA 479 837. Design 7087 is based on design 7088. In particular, and as shown in in Exhibits A and B of the Third Amended Complaint, while the 7088 design consists of a decorative pattern of flowers, the 7087 design consists of a section of this pattern. After filing its Third Amended Complaint, Klauber applied to register the copyright

in the 7087 design. The Copyright Office denied registration, however, because it determined that the copyrightable material in the 7087 design is already contained in and covered by the previously registered 7088 design. Thus, as stated by the Copyright Office Examiner, the copyrightable authorship of the 7087 design is already protected by the registration for the 7088 design. (*See* Exhibits 1 and 2 of the Declaration of Philip H. Gottfried filed herewith.)

Klauber's lace designs are very successful, and the lace pattern at issue is sold by Klauber exclusively to the well-known lingerie brand, Hanky Panky, for use in its famous and iconic lace panty. In or about 2009, Klauber learned that Bon-Ton and Russell-Newman were infringing Klauber's copyrights in the lace designs by offering for sale and selling garments incorporating the designs (defined in the Third Amended Complaint as the "First Infringing Garments"). An example of the First Infringing Garments is shown in Exhibit F of the Third Amended Complaint. Klauber sued Defendants for copyright infringement in Civil Action No. 09 CIV 7201 (PGG) (the "Prior Litigation").

In January 2010, Klauber and Defendants entered into a Settlement Agreement. Under the terms of the Settlement Agreement, Klauber agreed to: (1) dismiss the Prior Litigation with prejudice; and (2) allow Bon-Ton a limited time to sell off First Infringing Garments that Bon-Ton had in inventory and on-order from Russell-Newman. In return for these promises by Klauber, Defendants agreed to: (1) make certain payments to Klauber; and (2) subject to Bon-Ton's sell-off, cease and desist from infringing, including displaying, the lace designs in the future. In particular, with respect to No. 2, pursuant to Paragraph 4(f) Bon-Ton warranted and represented that:

> it shall permanently cease and desist from all manufacturing, advertising, offering for sale, importing or sale of garments with any lace substantially similar to . . . Klauber Lace Design Nos. 7087, 7088 and 7089 or any lace which infringes Copyright Registration Certificate Nos. VA479,838 or VA479,837 . . .

512010.2                                          -3-

Klauber fulfilled its obligations under the Settlement Agreement by not objecting to Bon-Ton's sell-off, by dismissing the Prior Litigation with prejudice, and by releasing the Defendants based upon their agreed undertakings. Defendants, on the other hand, did not fulfill their obligations, and in fact committed numerous breaches of the Settlement Agreement. First, Defendants failed to make certain payments required under the Settlement Agreement. Second, Bon-Ton breached paragraph 4(f) by advertising and offering for sale a Maindenform thong incorporating Klauber's 7087 design (defined in the Third Amended Complaint as the "Second Infringing Garments"). An example of one of the Second Infringing Garments is shown in Exhibit G of the Third Amended Complaint.

Bon-Ton also breached paragraph 4(f) of the Agreement by advertising and offering for sale on its website its own RELATIVITY brand cotton/spandex bikini incorporating Klauber's 7087 design. An example of the RELATIVITY Bikini is shown in Exhibit H of the Third Amended Complaint. Bon-Ton also at least engaged in "bait and switch" advertising with respect to the RELATIVITY Bikini. In particular, Bon-Ton lured customers to its website with an offer to sell bikinis incorporating Klauber's 7087 design, but when a customer ordered the bikini from the website, Bon-Ton actually shipped (at least to some of its customers) a bikini with a different lace in the waistband. To the extent Bon-Ton actually shipped the RELATIVITY Bikini shown on its website, this should be classified as a "Third Infringing Garment."

Lastly, after filing the Third Amended Complaint, Klauber learned that Bon-Ton committed yet another breach of paragraph 4(f) of the Settlement Agreement, this time by offering for sale and selling another Maidenform infringement, the Charmed undergarment incorporating a different infringement of Klauber's 7087 design (the "Charmed Infringement").

An example of the Charmed Infringement is shown in Exhibit 3 of the accompanying Declaration of Philip H. Gottfried. To the extent the Charmed Infringement would not be considered part of the Second Infringing Garments, Klauber will seek to amend its Third Amended Complaint to specifically add new claims for breach of contract and copyright infringement relating to the Charmed Infringement.

## III.  LEGAL ARGUMENT

### A.  Standard For Motion To Dismiss

On a motion to dismiss, the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). In general, a court may only consider the pleadings when ruling on a motion to dismiss. *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996) (holding that, "[i]n considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b) (6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference" (*quoting Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)).

### B.  Klauber Has Stated A Claim for Breach of Contract

To plead a breach of contract under New York law, the plaintiff must allege four elements: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) nonperformance by the other party; and (4) damages attributable to the breach. *Mazzola v. Roomster Corp.,* 2012 U.S. Dist. LEXIS 42123 (S.D.N.Y. Mar. 26, 2012).

In the instant case, Klauber has clearly pled all necessary elements for breach of contract. In particular, Klauber alleges: (1) the existence of a contract (*i.e.,* the Settlement Agreement); (2) Klauber's performance of its obligations under the Agreement *(i.e.,* consenting to Bon-Ton's

sell-off for the First Infringing Garments, releasing the Defendants, and dismissing the Prior Action with prejudice); (3) Bon-Ton's nonperformance of its obligations (*i.e.*, failure to pay Klauber in accordance with the Settlement Agreement, and breaching paragraph 4(f) of the Settlement Agreement by offering the Second and Third Infringing Garments); and (4) resulting damage consisting of, at least, the payments not made to Klauber, and the damages to which Klauber is entitled for Bon-Ton's sale of infringements.

In its motion to dismiss, Bon-Ton argues that the breach of contract claim should be dismissed as to Bon-Ton because the Settlement Agreement does not impose joint and several liability with respect to the payments due, and that the settlement payments were to be made by Russell-Newman. This argument, however, fails to recognize that the obligation to make the settlement payments covered both Russell-Newman and Bon-Ton, if not explicitly, then implicitly. Russell-Newman was Bon-Ton's supplier of the First Infringing Garments and obviously agreed to make the settlement payments on behalf of its customer. Bon-Ton got the benefit of the bargain; but without the payments, there was a failure of consideration to Klauber, and it is the obligation of the Defendants, including Bon-Ton, to make the required payments. The parties certainly did not intend that, if Russell-Newman did not make the payments, that the payment obligation would disappear. The obligations of Russell-Newman and Bon-Ton were not severed in this regard. Indeed, under New York law there is a presumption of joint obligations in agreements, and words of severance are necessary to overcome this presumption. *See Alexander v. Wheeler*, 407 N.Y.S.2d 319, 320 (N.Y. App. Div. 1978). In this case, there is no language of severance in the Settlement Agreement such that the presumption of joint obligation of Russell-Newman and Bon-Ton can be overcome.

In addition to the breach for failure to make the required settlement payments, Klauber has also asserted that Bon-Ton offered for sale the Second and Third Infringing Garments

following the agreed sell-off period, in breach of paragraph 4(f) of the Settlement Agreement. In the event that additional allegations are deemed necessary with respect to this aspect of the breach of contract claim, Klauber respectfully requests that it be permitted to amend its Third Amended Complaint under Rule 15's liberal standard.

### C.     Klauber Has Stated a Claim for Copyright Infringement

In order to state a claim for copyright infringement, a party need allege "(1) ownership of a valid copyright, and (2) copying [by defendant] of constituent elements of the [plaintiff's] work that are original." *Feist Pub'Ins, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *accord Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).

In this case, Klauber alleged ownership of valid copyrights in the 7088 and 7089 designs, and attached copyright registrations and illustrations of the designs to the Third Amended Complaint (Exhibits A-E). Klauber also alleged that Bon-Ton copied the designs, which are wholly original, and attached a picture of a more recent infringing garment as Exhibit G to the Third Amended Complaint. Thus, Klauber has stated a claim for copyright infringement with respect to the Second and Third Infringing Garments.

In addition, after the Third Amended complaint was filed, Klauber learned of yet another infringement by Bon-Ton, the Charmed Infringement. *See* Exhibit 3 of the Declaration of Philip H. Gottfried filed herewith.

#### 1.     Bon-Ton's Argument That The 7087 Design Is Not Registered Is Unavailing

In asserting that the copyright infringement claim with respect to the Second and Third Infringing Garments should be dismissed, Bon-Ton maintains that Klauber has not met the prerequisite for bringing a copyright infringement claim of the 7087 design pursuant to Section 411(a) of the Copyright Act, *i.e.*, that the design is not registered. This argument must fail,

however, because the 7087 design is a derivative work of the 7088 design, which is registered, and the registered 7088 design has all of the elements contained in the derivative 7087. As courts have consistently held, a copyright infringement claim can be maintained based on an unregistered derivative work if the derivative work incorporates significant protectable elements of a registered original work. *See, e.g., Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp.2d 487, 497-8 ((S.D.N.Y. 2001); *citing Montgomery v. Noga*, 168 F.3d 1282, 1293 (11th Cir. 1999) ("The owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a copyright infringement suit against a defendant who reproduces the derivative work -- and thus the underlying work contained therein -- without authorization.").

Similarly, as the court explained in *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009):

> [t]he copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." . . . From this it logically follows that unauthorized copying of a derivative work infringes the derivative work itself only to the extent of the newly added material; any infringement of the preexisting material infringes the pre-existing work, rather than the derivative work from which the pre-existing material may have actually been copied. The leading copyright treatise is in accord with this result, explaining that since "a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright proprietor's consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain" a suit for copying an unregistered derivative work. 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][2][b] (2008) (internal footnote omitted).

In the instant case, the 7087 design is not only derived from the registered 7088 decorative flower design, the 7088 design contains <u>all</u> of the elements of the 7087 design. The 7087 design is a section of the 7088 design. This was in fact recognized by the Examiner at the Copyright Office who refused registration of the 7087 design because the artwork of the 7087

design is already contained in the 7088 design, which is the subject of Copyright Registration No. VA 479 838. (See e-mail and letter from copyright examiner, Declaration of Philip H. Gottfried, Exhibits 1 and 2.) As stated by the Examiner, the copyrightable authorship of the 7087 design is already protected by the earlier registered 7088 design.

The cases cited by Bon-Ton support Klauber's position. For example, in *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F. 3d 112, 116 (2d Cir., 2003), the Second Circuit found that plaintiff, which asserted infringement of an unregistered derivative work, had no standing to sue. However, this was based on the fact that the elements of plaintiff's work which defendant copied appeared only in the derivative work, and not in the underlying registered work. Here, all of the elements of the 7087 design infringed by Bon-Ton appear in the registered 7088 design.

Similarly in *Lewinson v. Henry Hold and Co.*, LLC, 659 F. Supp. 2d 547, 562 (S.D.N.Y. 2009), the Court cites *Well-Made Toy* for the proposition that a plaintiff is not barred from pursuing a claim in federal court based on infringement of elements contained in a registered work from which an unregistered work was derived. That is precisely the present situation.

Moreover, apart from the 7087 design, Klauber also asserts infringement of the 7088 and 7089 designs, and there is no dispute that these designs are the subject of copyright registrations.

    2.    <u>Access and Substantial Similarity</u>

Bon-Ton's argument that Klauber failed to plead copying and access to the Klauber lace designs is not credible. Klauber has clearly pled that Bon-Ton had access to the lace designs. In particular, as stated in the Third Amended Complaint the designs were the subject of the Prior Litigation and Settlement Agreement. Thus, the allegations of access are beyond dispute.

Bon-Ton's argument that the designs are not substantially similar fails as a comparison of the designs clearly shows the substantial similarity. Although Bon-Ton asserts that the only reason the design on its lace underwear is similar to Klauber's lace designs is because the

designs contain roses, and Klauber cannot protect the idea of a rose, this argument is misplaced. Under well-established Second Circuit law, the test for substantial similarity is "the ordinary observer test", which inquires whether an average lay observer, unless he sets out to detect the disparities, would be disposed to overlook them and regard the aesthetic appeal as the same. *See Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).

Although the *Hamil* Court recognized that there is a different test, referred to as "the more discerning ordinary observer test", which requires the court to eliminate the elements of the work which are not capable of separate copyright protection from its consideration and determine whether the protectible elements, standing alone, are substantially similar, the Court held that this test should only be used in cases involving works which incorporate elements from the public domain. For example, in *Folio Impressions v. Byer California*, 937 F.2d 759 (2d Cir. 1991), cited by Bon-Ton, the allegedly infringed pattern featured a background that was copied from the public domain, and therefore, the court ignored the background design in determining whether the plaintiff's and defendant's designs were substantially similar. The court explained that Folio Impressions featured "rather specialized facts" and held that the case "provides no authority for the broad proposition that in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable."

The holding in *Hamil America* has been followed by other Courts in the Second Circuit. For example, in *Boisson v. American Country Quilts and Linens, Inc.*, 273 F.3d 262 (2d Cir. 2001), the Second Circuit reiterated that "where the plaintiff's work contains no material imported from the public domain, the 'more discerning' test is unnecessary." Consistent with this analysis, the *Boisson* court employed the "more discerning test" since plaintiff's quilt featured the alphabet, which is in the public domain. *See also Aaron Basha Corp. v. Felix B.*

512010.2                                -10-

*Vollman, Inc.*, 88 F. Supp.2d 226, 231 (S.D.N.Y. 2000) (the more discerning ordinary observer test "which ignores the unprotectable portions of a plaintiff's work and instead compares only those elements which are in themselves copyrightable" ... "applies only if a plaintiff has imported a substantial portion of its work from the public domain" (citations omitted); *Diamond Dirext, LLC v. Star Diamond Group, Inc.*, 116 F. Supp.2d 525, 530 n. 31 (S.D.N.Y. 2000).

### D. Klauber States a Claim for False Advertising

Section 43(a) of the Lanham Act prohibits a person from, "in commercial advertising or promotion, misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). A claim of false advertising may be based on at least one of two theories: "that the alleged advertisement is literally false, i.e., false on its face," or "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007).

It is well-established that where a defendant uses a picture of plaintiff's product to sell its own, different product, there is a cause of action under the Lanham Act. *See, e.g., Sublime Products, Inc. v. Gerber Products, Inc.*, 579 F. Supp. 248 (S.D.N.Y. 1984) (finding deceptive advertising in connection with defendant's use of plaintiff's lamps to advertise defendant's lamps.).

In the instant case, Klauber has sufficiently alleged that Bon-Ton at least pulled a "bait and switch" by offering on its website undergarments under Bon-Ton's RELATIVITY mark showing, as the waistband, Klauber's 7087 lace design. However, when Klauber ordered this product from Bon-Ton, it received RELATIVITY garments with a different waistband. Clearly, this constitutes false advertising under the well-established case law.

Bon-Ton argues that Klauber lacks standing to assert a false advertising claim. In order for a plaintiff to have standing to assert a claim for false advertising under the Lanham Act, the plaintiff need only allege: (1) a reasonable interest to be protected against the alleged false advertising; and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising. *Salon FAD v. L'Oreal USA, Inc.*, 100 U.S.P.Q.2d (BNA) 1245 (S.D.N.Y. 2011), citing *Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106, 113 (2d Cir. 2010). In *Salon FAD*, the court found that hair salons had standing to sue manufacturers of hair products, even though the parties clearly did not compete. Similarly, in *Famous Horse*, the Second Circuit held that the operator of a chain of stores selling brand name jeans could sue its supplier for false advertising where the supplier sold counterfeit jeans to the chain and then falsely informed other customers that the chain was satisfied with the counterfeit product.

As in *Salon Fad and Famous Horse*, Klauber has a reasonable interest to be protected against Bon-Ton's false advertising and a reasonable basis for believing that this interest will be damaged by Bon-Ton's false advertising. In particular, Klauber sells the lace pattern at issue exclusively to the well known lingerie brand, Hanky Panky, for use in its famous and iconic lace panty (the "Iconic Lace Panty"). Accordingly, Klauber's customer, who *is* in direct competition with Bon-Ton, may well be damaged by Bon-Ton's advertisement for panties incorporating Hanky Panky's Iconic Lace Panty design, and this will in turn damage Klauber. For example, Hanky Panky will not want to pay for exclusive rights to Klauber's designs if competitors are offering for sale the same designs. Also, consumers may mistakenly attribute Bon-Ton's "bait and switch" advertising to Hanky Panky, since the design at issue is well-known, and consumers who order the product as advertised will be angry when they receive a different product. That anger may very will be directed at Hanky Panky. Accordingly, it is respectfully submitted that Klauber has standing to assert a claim for false advertising.

## IV. CONCLUSION

In light of the foregoing, Klauber respectfully requests that the Court deny Bon-Ton's Motion To Dismiss in all respects. In the alternative, Klauber respectfully requests leave to amend its Third Amend Complaint in view of the Court's ruling.

Respectfully submitted,

Dated: May 25, 2012
New York, New York

By: _/s/ Philip H. Gottfried_
Philip H. Gottfried
Marc J. Jason
Holly Pekowsky

AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served by electronic mail this 25th day of May, 2012 on the following pursuant to the parties' agreement:

>   Vanessa C. Hew
>   Suzan Jo
>   R. Terry Parker
>   1540 Broadway
>   New York, NY  10036
>   vchew@duanemorris.com
>   sjo@duanemorris.com
>   tparker@duanemorris.com

AMSTER, ROTHSTEIN & EBENSTEIN LLP

_____
Philip H. Gottfried