UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLAUBER BROTHERS, INC.,

                      Plaintiff,

- against -

RUSSELL-NEWMAN, INC., and
THE BON-TON STORES, INC.,

                      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 26, 2013

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 4985 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this action, Plaintiff Klauber Brothers, Inc claims that defendants Russell-Newman, Inc. and the Bon-Ton Stores, Inc. (collectively, "Defendants") infringed its copyrights in certain of Plaintiff's lace patterns by selling women's underwear that incorporates substantially similar patterns. A related action was filed on August 14, 2009. On January 26, 2010, this Court "so ordered" the parties' stipulation of dismissal in that case, which was conditioned on the consummation of a settlement agreement ("Settlement Agreement"). See Klauber Bros., Inc. v. The Bon-Ton Stores, Inc., No. 09 Civ. 7201 (PGG), Dkt. No. 12 (S.D.N.Y. Jan. 26, 2010).

       Klauber filed a new complaint on July 20, 2011, alleging that Defendants had breached the Settlement Agreement, committed new acts of copyright infringement, and engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (Dkt. No. 1)

       Bon-Ton has moved to dismiss the Third Amended Complaint ("TAC") under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 17) For the reasons stated below, Bon-Ton's motion will be granted.

## BACKGROUND

Klauber is a New York corporation with its principal place of business in New York. (TAC ¶ 1) It has designed, manufactured, and sold original knit fabrics since 1859. (Id. ¶ 6) Russell-Newman is a Delaware corporation that manufactures women's underwear. (Id. ¶ 2) Its principal place of business is in Texas. (Id. ¶ 2) Bon-Ton is a Pennsylvania-based and incorporated retail clothing store, which sells, inter alia, women's underwear. (Id. ¶ 3)

In 1991, Klauber co-authored and published lace designs numbered 7087, 7088, and 7089. (Id. ¶¶ 7, 9; see id., Ex. A-C (displaying photographs of these designs)) Plaintiff has registered copyrights to designs 7088 and 7089 with the Register of Copyrights. (Id. ¶ 10; see Id., Ex. D-E (copies of copyright registrations for designs 7088 and 7089)) Design 7087 is purportedly a derivative work of designs 7088 and 7089. (Id. ¶ 10)

On August 9, 2009, Plaintiff filed a copyright infringement action in this Court against Bon-Ton and Russell-Newman. See Klauber Bros., Inc. v. The Bon-Ton Stores, Inc., No. 09 Civ. 7201 (PGG) (S.D.N.Y. Aug. 9, 2009). The complaint in that case alleged that Bon-Ton and Russell-Newman were selling women's underwear that incorporated lace designs that infringed on Plaintiff's copyrights. (Id. ¶¶ 12-13; see id., Ex. G (photograph of allegedly infringing garment)) In January 2010, the parties entered into a Settlement Agreement and the Court signed a stipulation dismissing the litigation with prejudice. (See No. 09 Civ. 7201 (PGG), Dkt. No. 12 (S.D.N.Y. Jan. 26, 2010).

The Settlement Agreement is governed by New York law. (Parker Decl., Ex. A (Settlement Agreement) ¶ 12)[1] It provides, in relevant part:

---

[1] While the Settlement Agreement is not an exhibit to the TAC, it is incorporated by reference and therefore may be considered in resolving Bon-Ton's motion to dismiss. See DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for

> 6. . . . Russell-Newman agrees to make an Initial Payment to Klauber in the amount of $112,500 by a check payable to Klauber Brothers, Inc. . . .
>
> 7. In addition to th[is] Initial Payment . . . , Russell-Newman agrees to guarantee to Klauber an additional value of $150,000 (the "Additional Obligation") by itself purchasing or by directing its manufacturing contractors who fill Russell-Newman orders for products using lace to purchase lace from Klauber. . . . with 5% of the purchase price to be credited toward Russell-Newman's Additional Obligation until it has been met.

(Id. (Settlement Agreement) ¶¶ 6-7)  Plaintiff has not received any payments from Russell-Newman or Bon-Ton (TAC ¶¶ 18-20), and on July 20, 2011, Klauber filed this action.

Russell-Newman has not appeared in this case and is apparently defunct.  (Bon-Ton Br. 2)  Bon-Ton filed its motion to dismiss on April 30, 2012.  (Dkt. No. 17)

## DISCUSSION

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  These factual allegations must be "sufficient to raise a right to relief above the speculative level."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id.  (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

---

failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint."  (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002))).

3

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle NE., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111 (citing Chambers, 282 F.3d at 153; Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II. BREACH OF CONTRACT CLAIM

Klauber asserts that Bon-Ton is jointly and severally liable for the payments Russell-Newman agreed to make in paragraphs 6 and 7 of the Settlement Agreement. (TAC ¶¶ 15-20) Bon-Ton argues that the breach claim asserted against it must be dismissed, because the Settlement Agreement does not make Bon-Ton jointly and severally liable for these payment obligations . (Bon-Ton Br. 4-7)

### A. Applicable Law

Under New York law, "'[i]n the case of a contract with multiple obligors or multiple obligees, [whether contract rights or duties are joint, several, or joint and several] is ultimately a question of the parties' intent, as revealed by the language of their contract and the

4

subject matter to which it relates, as well as the surrounding circumstances. . . .'" <u>NYKcool A.B. v. Pac. Fruit Inc.</u>, No. 10 Civ. 3867 (LAK) (AJP), 2010 WL 4812975, at *12 (S.D.N.Y. Nov. 24, 2010) (quoting 12 Williston on Contracts § 36:2 (4th ed. 2010) (alterations in original)). "To understand the intentions of parties who have entered into a written agreement, a court must look first to the plain language of the agreement itself." <u>Lemus v. Manhattan Car Wash, Inc.</u>, No. 06 Civ. 15486 (MHD), 2010 WL 1372705 at *7 & n.16 (S.D.N.Y. Mar. 26, 2010) (collecting cases). Only if a court finds that a contract is ambiguous may it consider "'extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'" <u>Morgan Stanley Grp. Inc. v. New England Ins. Co.</u>, 225 F.3d 270, 276 (2d Cir. 2000) (quoting <u>Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's</u>, 136 F.3d 82, 86 (2d Cir. 1998)).

  B. <u>Analysis</u>

    Here, the plain language of the Settlement Agreement specifically assigns separate obligations to Russell-Newman and Bon-Ton. The Settlement Agreement provides, in relevant part:

> 6. . . . <u>Russell-Newman</u> agrees to make an Initial Payment to Klauber in the amount of $112,500 by a check payable to Klauber Brothers, Inc. . . .
>
> 7. In addition to th[is] Initial Payment . . . , <u>Russell-Newman</u> agrees to guarantee to Klauber an additional value of $150,000 (the "Additional Obligation") by itself purchasing or by directing its manufacturing contractors who fill Russell-Newman orders for products using lace to purchase lace from Klauber . . . with 5% of the purchase price to be credited toward <u>Russell-Newman</u>'s Additional Obligation until it has been met.

(Parker Decl., Ex. A (Settlement Agreement) ¶¶ 6-7 (emphasis added)) The Settlement Agreement further provides for a schedule according to which Russell-Newman will place its orders. (<u>Id.</u> ¶ 7(a)-(d)) The Settlement Agreement plainly does not impose any obligation on Bon-Ton to make any payments to Klauber.

5

Klauber's arguments to the contrary are not persuasive.  First, Klauber argues that "the obligation to make the settlement payments covered both Russell-Newman and Bon-Ton, if not explicitly, then implicitly" because "without the payments, there was a failure of consideration to Klauber."  (Opp. Br. 6)  However, simply because Klauber claims, in effect, that it struck a bad bargain with Bon-Ton does not allow the Court to alter the plain meaning of the Settlement Agreement.  See Childs v. Levitt, 151 A.D.2d 318, 320 (1st Dept. 1989) ("Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain.").

Next, Klauber argues that "under New York law there is a presumption of joint obligations in agreements, and words of severance are necessary to overcome this presumption . . . .  In this case, there is no language of severance in the Settlement Agreement such that the presumption of joint obligation of Russell-Newman and Bon-Ton can be overcome."  (Opp. Br. 6 (citing Alexander v. Wheeler, 64 A.D.2d 837 (4th Dept. 1978))  Regardless of any presumption, however, the Settlement Agreement clearly imposes different obligations on Russell-Newman and Bon-Ton, and specifically provides that only Russell-Newman will be responsible for the payments.

Finally, Klauber argues that Bon-Ton breached the Settlement Agreement by selling women's underwear with lace patterns similar to the underwear that was the subject of the Settlement Agreement.  (Opp. Br. 6-7)  This claim is not made in the TAC, however, and "[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss."  Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003).

Bon-Ton's motion to dismiss Plaintiff's breach of contract claim will be granted.

## II. COPYRIGHT CLAIM

Bon-Ton argues that to the extent Klauber's copyright claim is based on alleged infringement of the 7087 lace pattern, that claim should be dismissed, because 7087 was not registered with the United States Copyright Office. (Bon-Ton Br. 7-9) Bon-Ton also argues that the TAC fails to state a claim for copyright infringement, because Klauber has not alleged the necessary element of copying and has not demonstrated substantial similarity. (Bon-Ton Br. 9-15)

### A. Copyright Claim Based on Lace Design 7087

Section 411(a) of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a). "Courts in this Circuit require that a plaintiff either hold a valid copyright registration or have applied and been refused a registration as a prerequisite to filing a civil claim." Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co., No. 09 Civ. 2669 (LAP), 2012 WL 1021535, at *2 (S.D.N.Y. Mar. 26, 2012). While this "precondition" to filing a copyright claim is not jurisdictional, Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1247 (2010), "[i]t remains the law in this Circuit that § 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed." Muench Photography, 2012 WL 1021535, at *5.

Here, Klauber argues that its 7087 design is a "derivative work of the 7088 design, which is registered." (Opp. Br. 8; see also TAC ¶ 10) A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . [including a] work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a

7

whole, represent an original work of authorship." 17 U.S.C. § 101.  The owner of a derivative work may maintain a copyright action against an alleged infringer, based on any infringement of the pre-existing work from which the derivative work is derived.  See SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009) (holding that "since 'a derivative work by definition consists of matter that would be infringing if it had been derived from the preexisting work without the copyright proprietor's consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain' a suit for copying an unregistered derivative work." (quoting 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][2][b] (2008))).  While an action for infringement of a derivative work may be maintained, "[i]n considering such a claim, . . . the Court must compare the allegedly infringing work with the Registered Work, and not with the Unregistered [Work]." Lewinson v. Henry Holt & Co., LLC, 659 F. Supp. 2d 547, 562 (S.D.N.Y. 2009) (citing Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 116 (2d Cir. 2003)).

    Here, the 7087 design is a derivative work of the 7088 design.  Indeed, the 7087 design is simply a section of the larger 7088 design.  (Compare TAC, Ex. A (7087 design) with TAC, Ex. B (7088 design))  Moreover, contrary to Bon-Ton's contention (Reply 3-4), Well-Made Toy does not stand for the broad proposition that the Copyright Act bars all copyright claims based on an unregistered derivative work.  Rather, Well-Made Toy's holding barring a copyright claim based on an unregistered derivative work turns on the fact that the allegedly infringing work "only copied expressive elements" of the unregistered derivative work which "d[id] not appear in any work whose copyright ha[d] been registered." Well-Made Toy, 354 F.3d at 116.  Here, by contrast, all of the elements of the unregistered 7087 design are contained in the registered 7088 design.  Where, as here, the "unregistered versions 'incorporate

protectable elements of [a registered version] and were [allegedly] copied in an unauthorized manner, the infringement of the underlying work, through the unauthorized copying of the derivative work[], serves as the basis for . . . [an] action based on the registration of the underlying work.'" SimplexGrinnell, 642 F. Supp. 2d at 214.

Because all of the allegedly protectable elements of the 7087 design are contained in the registered 7088 design, Klauber can maintain a copyright action based on the alleged unauthorized copying of the 7087 design.

### B.     Elements of a Copyright Infringement Claim

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  Here, Bon-Ton argues that Klauber fails to plead unauthorized copying. (Bon-Ton Br. 10-11)

> To demonstrate unauthorized copying, the plaintiff must first show that his work was actually copied; second he must establish substantial similarity or that the copying amounts to an improper or unlawful appropriation, i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than de minimis.

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (internal quotation marks and citation omitted).

"Thus, as an initial matter, a plaintiff must show that the defendant 'actually copied' [Plaintiff's] work." Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2007).  "In the absence of direct evidence, copying is proven by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." Williams, 84 F.3d at 587. "In the alternative, '[i]f the two works are so strikingly

9

similar as to preclude the possibility of independent creation, "copying" may be proved without a showing of access.'" Tisi v. Patrick, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000) (quoting Ferguson v. NBC, Inc., 584 F.2d 111, 113 (5th Cir. 1978)). "Once copying has been shown, a plaintiff must still demonstrate 'substantial similarity' between the defendant's work and the protectible elements of plaintiff's work, because 'not all copying results in copyright infringement.'" Gal, 518 F. Supp. 2d at 537 (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001)).[2]

### 1. Plaintiff has Adequately Pled Copying

Bon-Ton first argues that Plaintiff fails to plead copying, because the TAC "does not contain any allegations that Bon-Ton had access to the Lace Patterns." (Bon-Ton Br. 10) "'Access means that an alleged infringer had a "reasonable possibility" – not simply a "bare possibility" – of hearing [or seeing] the prior work.'" Gal, 518 F. Supp. 2d at 538 (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003)). Under this standard, Plaintiff has adequately alleged access.

First, Plaintiff alleges that Bon-Ton became aware of Plaintiff's copyrights at least as early as August 14, 2009, when the first (and settled) action was filed. (See TAC ¶ 13 (noting that the prior action alleged infringement of the same copyrights that are at issue here)) The TAC further alleges that after the Settlement Agreement was executed, Bon-Ton continued to infringe Plaintiff's copyrights. (TAC ¶ 25) The Settlement Agreement itself indicates that

---

[2] "The presence of a 'substantial similarity' standard in two parts of the test (i.e. as a requirement for demonstrating copying and subsequently as a requirement for demonstrating unlawful copying) has caused some confusion. The Second Circuit has observed, 'In an effort to clarify this confusion, we have noted that the term "probative similarity" should be used when referring to the initial burden of proving copying by establishing access and/or similarities. After a plaintiff has proved copying, he or she must then show that the copying was unlawful by establishing "substantial similarity" between the works at issue.'" Gal, 518 F. Supp. 2d at, 537 n.4 (quoting Repp, K & R Music, Inc. v. Webber, 132 F.3d 882, 889 n.1 (2d Cir. 1997)).

Bon-Ton was aware of – and in fact agreed not to infringe – the copyrights at issue in this case. (See Settlement Agreement ¶ 4(f))  Accordingly, Plaintiff has adequately pled access.

Second, Bon-Ton argues that Klauber's copying allegations are defective because the TAC does not plead that "the works at issue are substantially or strikingly similar." (Bon-Ton Br. 11)  While Plaintiff does not explicitly plead substantial or striking similarity, Plaintiff does allege that Bon-Ton has made "a copy of [Plaintiff's] designs." (TAC ¶ 25)  The TAC also includes a photocopy of the garment that Klauber alleges violates its copyrights. (See TAC ¶ 25 & Ex. G)  The Court concludes that the TAC adequately pleads substantial similarity.

### 2. **Plaintiff Has Not Shown Substantial Similarity**

Bon-Ton argues that the allegedly infringing garments are not, as a matter of law, substantially similar to Plaintiff's copyrighted lace patterns. (Bon-Ton Br. 11-15)  "Once copying has been shown, a plaintiff must still demonstrate 'substantial similarity' between the defendant's work and the protectible elements of plaintiff's work, because 'not all copying results in copyright infringement.'" Gal, 518 F. Supp. 2d at 537 (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001)).  The Second Circuit has noted that

> "'[t]he determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations.' 4-13 Nimmer on Copyright § 13.03 (2009).  For that reason, and because the question of substantial similarity typically presents an extremely close question of fact, Arnstein v. Porter, 154 F.2d 464, 468-69 (2d Cir. 1946), questions of non-infringement have traditionally been reserved for the trier of fact.

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010).  "Although the question of substantial similarity often must be resolved by a jury, a district court may resolve that question as a matter of law [where] . . . no reasonable jury, properly instructed, could find that the two works are substantially similar." DiTocco v. Riordan, 815 F. Supp. 2d

655, 666 (S.D.N.Y. 2011) (citation omitted)); see also Peter F Gaito Architecture, 602 F.3d at 67 (dismissing copyright infringement action where the court determined "the two designs are entirely different").

"In the Second Circuit, the 'standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" DiTocco, 815 F. Supp. 2d at 665 (quoting Peter F. Gaito Architecture, 602 F.3d at 66). This "'ordinary observer' test asks whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" Id. (quoting Peter F. Gaito Architecture, 602 F.3d at 66). In some cases, however, a court is to apply a "more discerning" test. This test, first articulated in Folio Impressions v. Byer California, 937 F.2d 759, 766 (2d Cir. 1991), applies when "a work contains both protectible and unprotectible elements, and requires the court to eliminate the unprotectible elements from its consideration and to ask whether the protectible elements, standing alone, are substantially similar." Hamil Am., Inc. v. GFI, 193 F.3d 92, 101 (2d Cir. 1999) (citing Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) and Folio Impressions, 937 F.2d at 765-66)).

The Second Circuit has clarified that the "more discerning" test applies only where the copyrighted work "is not 'wholly original,' but rather incorporates elements from the public domain." Boisson, 273 F.3d at 272 (quoting Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 514 (2d Cir. 1991); see also Aaron Basha Corp. v. Felix B. Vollman, Inc., 88 F. Supp. 2d 226, 231 (S.D.N.Y. 2000) ("[the more discerning] test applies only if a plaintiff has imported a substantial portion of its work from the public domain." (citing Hamil Am., 193 F.3d at 100-02)); Diamond Direct, LLC v. Star Diamond Grp., Inc., 116 F.

Supp. 2d 525, 530 n.31 (S.D.N.Y. 2000) ("[T]he Second Circuit has cautioned that [the more discerning test] is appropriate only where the other elements of the work have been copied from the public domain.").

Bon-Ton first argues that the Court should apply the "more discerning" test rather than the "ordinary observer" test, because the allegedly infringing garments contain both protectable and unprotectable elements. (Bon-Ton Br. 13; Reply 6-7) Bon-Ton contends that the two patterns contain the unprotected "'idea' of roses and leaves arranged in a curved or lace pattern consisting of roses, leaves and stems." (Bon-Ton Br. 13 (citing Folio Impressions, 937 F.2d at 766 )) Bon-Ton misconstrues when courts apply the "more discerning" test, however.

Folio Impressions "featured 'rather specialized facts' and provides no authority for the broad proposition that 'in comparing designs for copyright infringement, [courts] are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable.'" Hamil Am., 193 F.3d at 101. In addition, as discussed above, the Second Circuit has expressly limited the "more discerning" test to cases in which some elements of the work "have been copied from the public domain." Diamond Direct, 116 F. Supp. 2d at 530 n.31. Here, "the fact that the designs at issue in this case portrayed flowers does not preclude the use of the ordinary observer standard." Hamil Am., 193 F.3d at 101. As in Hamil America, the flowers on Plaintiff's lace patterns are "not simply the [unprotectable] depiction of a flower as it would appear in nature. It is an artistic rendering that has its own unique qualities." Id. Accordingly, the "ordinary observer" test is the appropriate standard in this case.

"Application of the ordinary observer standard requires [a court] to scrutinize the two patterns for substantial similarity" and consider whether "an average lay observer [would] recognize [the allegedly infringing design] as having been appropriated from [Klauber's

copyrighted designs].” Id. at 102; see Knitwaves, Inc., 71 F.3d at 1002.  In comparing works for infringement purposes, courts examine the works' "'total concept and feel.'"  Id. at 103 (quoting Knitwaves, Inc., 71 F.3d at 1004).  The Second Circuit has noted, in discussing how to apply the "ordinary observer" standard, that "'[g]ood eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts.'"  Id. at 102 (quoting Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2d Cir. 1974)).  "'What is required is only a visual comparison of the works.'"  Id. (quoting Folio Impressions, 937 F.2d at 766).

Analyzed under the "ordinary observer" standard, the allegedly infringing design is not substantially similar to Klauber's 7088 and 7089 designs.  (Compare TAC, Ex. B (7088 design) and TAC, Ex. C (7089 design) with TAC, Ex. G (allegedly infringing design))  The plant sprigs in 7088 and 7089 are much longer, feature many more leaves, and are more stylized than those in the allegedly infringing design, curling into semi-circles.  (See id.)  The flowers in 7088 and 7089 are buds, while the flowers on the allegedly infringing design are blossoms.  (See id.) 7088 has a border of small, interconnected dots of fabric; no such border is in the allegedly infringing design.  (Compare TAC, Ex. B with TAC, Ex. G)  The leaves in the allegedly infringing design feature a small center gap – presumably representing the spine of the leaf – whereas the leaves in 7088 and 7089 are solid.  (Compare TAC, Ex. B (7088 design) and TAC, Ex. C (7089 design) with TAC, Ex. G (allegedly infringing design))

The Court recognizes that its obligation is to "examine the works' 'total concept and feel,'" rather than the individual elements, Knitwaves, 71 F.3d at 1003, but there are enough differences in the individual elements here that the "total concept and feel" of these works – and their aesthetic appeal – is different.  While the works share use of a plant sprig design, the

similarities are not such that a reasonable jury could find that "an average lay observer [would] recognize [the allegedly infringing design] as having been appropriated from [Klauber's copyrighted designs]." See Hamil Am., 193 F.3d at 102.

In making this determination, this Court has carefully considered fabric cases in this Circuit in which courts have found infringement. A common element in the cases that have found infringement – which is not a factor here – is the presence of a similar or identical color scheme. See, e.g., Hamil Am., 193 F.3d at 102 ("[b]oth fabrics use the exact same colors in the same manner"); Knitwaves, Inc., 71 F.3d at 1004 (noting "sweaters' bold, and almost identical, color schemes"); Soptra Fabrics Corp, 490 F.2d at 1094 (faulting district court for "attempt[ing] to look beyond . . . color similarities"); Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969) ("[t]he colors are essentially the same"); Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) ("[b]oth designs have the same general color"); Lauratex Textile Corp. v. Allton Knitting Mills Inc., 517 F. Supp. 900 (S.D.N.Y. 1981) ("[b]oth [designs] use precisely the same color combinations in the same balance of colors"); Couleur Int'l Ltd. v. Opulent Fabrics Inc., 330 F. Supp. 152, 153 (S.D.N.Y. 1971) ("[o]ne of the defendant's samples is printed in colors which are identical to those in one of plaintiff's fabrics"). "The appearance in one of defendant's fabrics of colors identical to plaintiff's is[, of course,] additional evidence of actual copying, as well as another factor leading to the conclusion that the aesthetic appeal of the fabrics is the same. . . ." Couleur Int'l, 330 F. Supp. at 154.

Here, the "other factor" of a common color scheme is not alleged. Given the differences in the designs, this Court cannot find that the allegedly infringing design is

15

"substantially similar" to Klauber's 7088 and 7089 designs. Accordingly, Bon-Ton's motion to dismiss Klauber's copyright claim will be granted.[3]

## III. LANHAM ACT CLAIM

Bon-Ton argues that Klauber's Lanham Act claim must be dismissed because (1) Klauber has not provided sufficient notice as to the type of Lanham Act claim it is bringing; (2) Klauber's complaint is directed at statements concerning the authorship of a work; and (3) Klauber lacks standing to bring a Lanham Act claim. (Bon-Ton Br. 15-24)

### A. Klauber Has Given Adequate Notice of the Nature of Its Lanham Act Claim

Bon-Ton argues that Klauber's Lanhan Act claim should be dismissed under Fed. R. Civ. P. 8(a), because it is "too vague to allow Bon-Ton to respond." Bon-Ton complains that "it is not clear from the pleadings whether relief is sought for false designation of origin under § 43(a)(1)(A) or false advertising under § 43(a)(1)(B)." (Bon-Ton Br. 15-16)

Section 43(a)(1)(A) of the Lanham Act provides a cause of action for false designation of origin, and Section 43(a)(1)(B) provides a cause of action for "false advertising" – i.e., "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(A) and (b). The TAC pleads both "false designations of origin and false descriptions or representations." (TAC ¶ 29) In its opposition brief, however, Klauber makes clear that it intends to proceed under Section 43(a)(1)(B) with a claim for false advertising. (Opp. Br. 11)

---

[3] To the extent Klauber's copyright claim is premised on the 7087 design, that claim fails as well. As discussed above, 7087 is a derivative work of 7088. Having found no infringement of 7088, there can be no finding of infringement as to 7087. See Lewinson, 659 F. Supp. 2d at 577 (granting summary judgment to Defendant on an infringement claim based on an unregistered derivative work, after finding no infringement of the registered underlying work).

16

The premise for the false advertising claim is that (1) Bon-Ton has "offered for sale and displayed on its website its undergarments under the RELATIVITY mark . . . prominently showing, as the waistband, a copy of Klauber's 7087 lace" (TAC ¶ 32); but (2) when consumers order from Bon-Ton's website, they are "sent Bon-Ton's RELATIVITY women's cotton spandex bikini with a different lace in the waistband." (Id. ¶¶ 33-34)  It is clear that Section 43(a)(1)(B) provides a cause of action for this type of alleged "bait and switch." See, e.g., Sublime Prods., Inc. v. Gerber Prods., Inc., 579 F. Supp. 248, 250 (S.D.N.Y. 1984) (noting that "[i]t is well established that using a photograph of another's product to sell one's own cheaper product is . . . deceptive advertising").  Accordingly, the allegations in the TAC, as supplemented by the statements in Klauber's opposition brief, are adequate to apprise Bon-Ton of the nature of Klauber's Lanham Act claim.

### B. Klauber's Lanham Act Claim is not Premised on False Attribution of Authorship

Bon-Ton argues that Plaintiff's false advertising claim fails as a matter of law because "Lanham Act claims may not be premised on false representations or attributions of authorship of ideas or expression embodied or contained in goods." (Reply 7-9)  Bon-Ton did not make this argument in its moving brief, however, and "a party cannot raise new claims in a reply brief."  Stauffer v. Brooks Bros., Inc., No. 08 Civ. 10369 (SHS), 2012 WL 6621374, at *4 (S.D.N.Y. Dec. 19, 2012).

In any event, Bon-Ton's argument fails on the merits.  Bon-Ton is correct (Reply 8) that "[n]o claim for false advertising will stand where the statements of which a plaintiff complains [are] directed at the authorship of a work."  Broughel v. Battery Conservancy, No. 07 Civ. 7755 (GBD), 2010 WL 1028171, at *3 (S.D.N.Y. Mar. 16, 2010) (citing Invista S.a.r.l. v. E.I. Du Pont De Nemours & Co., No. 08 Civ. 7270 (BSJ), 2008 WL 4865208, at *4 (S.D.N.Y.

17

Nov. 3, 2008). However, the Broughel court, in dismissing the false advertising claim there, noted that the plaintiff had "alleged no facts suggesting that defendants engaged in commercial advertising or promotion that was designed to deceive the public as to the source of the product, nor is there any factual allegation that the public was in any way confused as to the source of the [the false designation] as a result of defendants' failure to attribute the design to plaintiff." Id. at *4. Here, by contrast, Plaintiff has alleged that as a result of Bon-Ton's false advertising, there exists "confusion, mistake and deception in the minds of the purchasing public as to the identity and source of the lace in Bon-Ton's product," which has caused Plaintiff damage. (TAC ¶¶ 35, 37, 39) In short, the TAC's false advertising claim is not premised on statements about the authorship of a work.

### C. Standing

Bon-Ton argues that Klauber lacks standing to bring a false advertising claim. (Bon-Ton Br. 21-24) "[I]n order to establish standing under the Lanham Act, a plaintiff must demonstrate (1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising." Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 113 (2d Cir. 2010) (citing Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994)). "The 'reasonable basis' prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising." Ortho Pharma., 32 F.3d at 694. "The Second Circuit has 'tended to require a more substantial showing [of injury and causation] where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two.'" Salon FAD v. L'Oreal USA, Inc., No. 10 Civ. 5063 (DLC), 2011 WL 70591, at *4 (S.D.N.Y. Jan. 10, 2011).

Bon-Ton argues that Plaintiff lacks standing because the TAC's "allegations do not allege any competitive injury to Klauber. Klauber is alleging injury to the consumer and not injury to itself." (Bon-Ton Br. 23) The Court agrees that the TAC does not contain sufficient allegations to demonstrate that Klauber has been injured by Bon-Ton's alleged false advertising.

The TAC's allegations as to Klauber's injury read as follows:

> Upon information and belief, the consuming public is likely to be confused, mistaken and deceived by Bon-Ton's use of such false designation of origin and false description and representation of Bon-Ton's product and the purchasing public has been and will continue to be induced into buying Bon-Ton's product of Exhibit I in the mistaken belief it is the product as shown in Exhibit H. Klauber believes that it will be and has been damaged by such false description and representation.

(TAC ¶ 37).

These allegations are not sufficient to make out a plausible claim for injury compensable by a false advertising Lanham Act claim, particularly given that Klauber is a lace manufacturer and is not a direct competitor of Bon-Ton.

In its opposition brief, Klauber sets out a theory of competitive injury not alleged in the TAC:

> . . . Klauber has a reasonable interest to be protected against Bon-Ton's false advertising and a reasonable basis for believing that this interest will be damaged by Bon-Ton's false advertising. In particular, Klauber sells the lace pattern at issue exclusively to the well known lingerie brand, Hanky Panky, for use in its famous and iconic lace panty (the "Iconic Lace Panty"). Accordingly, Klauber's customer, who is in direct competition with Bon-Ton, may well be damaged by Bon-Ton's advertisement for panties incorporating Hanky Panky's Iconic Lace Panty design, and this will in turn damage Klauber. For example, Hanky Panky will not want to pay for exclusive rights to Klauber's designs if competitors are offering for sale the same designs. Also, consumers may mistakingly attribute Bon-Ton's "bait and switch" advertising to Hanky Panky, since the design at issue is well-known, and consumers who order the product as advertised will be angry when they receive a different product. That anger may very w[e]ll be directed at Hanky Panky. Accordingly, it is respectfully submitted that Klauber has standing to assert a claim for false advertising.

(Opp. Br. 12) (emphasis in original).

Whatever the merits of this theory of injury, it is not pleaded in the TAC and may not be relied on now to defeat Bon-Ton's motion to dismiss. See Lerner, 240 F. Supp. 2d at 241; In re Colonial Ltd. P'ship Litig., 854 F. Supp. 64, 79 (D. Conn. 1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss.").

Because the TAC does not include allegations plausibly demonstrating that Klauber has suffered injury as a result of Bon-Ton's advertising, Klauber has not shown that it has standing to pursue its false advertising Lanham Act claim. Accordingly, that claim will be dismissed.

## CONCLUSION

For the reasons stated above, Bon-Ton's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion. (Dkt. No. 17)

Dated: New York, New York
       March 26, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge