**DUANE MORRIS** LLP
Vanessa C. Hew
Suzan Jo
R. Terry Parker
1540 Broadway
New York, NY 10036
(212) 692-1000
*Counsel for Defendant*
*The Bon-Ton Stores*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KLAUBER BROTHERS INC., | ) |
| Plaintiff, | ) ) ) CASE NO.: 11-CV-4985 |
| v. | ) (PGG) ) |
| RUSSELL-NEWMAN INC., and THE BON-TON STORES, INC., | ) ECF Case ) ) |
| Defendants. | ) ) ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

ARGUMENT ...............................................................................................................................3

I.  BON-TON IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS.............3

    A.    Under The Copyright Act, Bon-Ton Is Entitled to Recover Its Attorneys' Fees and Costs.................................................................................................. 3

    B.    Bon-Ton Is Entitled To Attorneys' Fees and Costs Under the Lanham Act .......... 5

    C.    Bon-Ton Is Entitled To Attorneys' Fees and Costs For The Breach of Contract Claims ....................................................................................................... 6

II.  THE ATTORNEYS' FEES SOUGHT ARE REASONABLE. .................................................8

    A.    The Hourly Rates Charged by Duane Morris LLP in This Matter are Reasonable ................................................................................................................ 9

    B.    The Number of Hours Expended by Counsel for Bon-Ton on This Matter is Reasonable ....................................................................................................... 10

    C.    The Costs Sought By Bon-Ton are Reasonable................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*In re Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil*, 160 F. Supp. 2d 613 (S.D.N.Y. 2001) ................................................................................................................. 10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) ........................................................................................................................ 8

B*ranch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359 (S.D.N.Y. 1991) ........................................ 4

*Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977) ............. 6

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290 (S.D.N.Y. 2008), *aff'd*, 2009 U.S. App. LEXIS 8540 (2d Cir. Apr. 21, 2009) ............................................ 4

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .............................................................................. 5

*Hudson v. Universal Studios, Inc.*, 2009 U.S.Dist. LEXIS 18729 (S.D.N.Y. March 4, 2009) ................................................................................................................................ 4

*IMAF, S.p.A v. J.C. Penny Co. Inc.*, 210 F. Supp. 96. (S.D.N.Y 2002) ..................................... 5-6

*Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................................ 9

*Klauber Brothers, Inc. v. The Bon Stores [sic], Inc.*, Case No. 09-cv-07201 (PGG) (the "Prior Litigation") ................................................................................................ 1-2, 5, 7

*Knitwaves, Inc. v. Lollvtogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) ................................................... 4-5

*Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, 2000 U.S. Dist. LEXIS 4549 (S.D.N.Y. April 11, 2000) ........................................................................................................................ 4

*Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116 (2d Cir. 2001) ..................................... 4

*Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir. 1980) ....................................................................... 6

*Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70 (2d Cir. 1986) .................................... 6

**Statutes**

*15 U.S.C. § 1117(a)* ...................................................................................................................... 5

17 U.S.C. § 505 ............................................................................................................................... 4

Defendant, The Bon-Ton Stores, Inc., (hereinafter "Bon-Ton") through its counsel, Duane Morris LLP, respectfully submits this Memorandum of Law in support of its Motion for Attorneys' Fees and Costs, and states as follows:

## PRELIMINARY STATEMENT

This is a case where an award of attorneys' fees and costs to the Defendant is wholly warranted. The Plaintiff, Klauber Brothers, Inc. ("Klauber") filed, not one, but three frivolous complaints against Bon-Ton. The Courts dismissal of each and every claim asserted by Klauber in its Third Amended Complaint shows that Klauber had no objective legal or factual basis for its claims. Moreover, Klauber's insistence upon amending - and re-amending - its complaint, forced Bon-Ton to expend significant legal fees in defending against the meritless claims in each of the complaints. Accordingly, this Court should award Bon-Ton its reasonable attorneys' fees and costs.

## STATEMENT OF FACTS

The legal saga between Bon-Ton and Klauber first began in August 2009, when Klauber filed a lawsuit against Bon-Ton and Bon-Ton's supplier, Russell-Newman, Inc. ("Russell-Newman"), alleging copyright infringement of its lace patterns 7087, 7088, and 7089 (the "Lace Patterns"). *See Klauber Brothers, Inc. v. The Bon Stores [sic], Inc.*, Case No. 09-cv-07201 (PGG) (the "Prior Litigation"). In order to avoid protracted litigation, on or about January 22, 2010, Bon-Ton, Russell-Newman, and Klauber entered into a settlement agreement (the "Settlement Agreement") under which Klauber agreed to release Bon-Ton and Russell-Newman from all claims arising from the alleged infringement of the Lace Patterns.[1] Pursuant to the Settlement Agreement, the Prior Litigation was dismissed, *with prejudice.*

---

[1] The Settlement Agreement is attached as exhibit A to the accompanying declaration of R. Terry Parker in Support of Defendant the Bon-Ton Stores, Inc.'s Motion to Dismiss.

In July 2011, Klauber initiated the instant action, initially only against Russell-Newman alleging that Russell-Newman breached the Settlement Agreement by failing to make the requisite payments thereunder. When Klauber was unable to serve the complaint upon Russell-Newman (apparently because Russell-Newman had become defunct), Klauber filed its First Amended Complaint which named Bon-Ton as an additional defendant. However, the First Amended Complaint failed to assert a valid claim because it sought to resurrect claims that were released in the Settlement Agreement and dismissed with prejudice in the Prior Litigation.

In a conference with the parties on December 15, 2011, the Court gave Klauber an opportunity to correct the deficiencies in its First Amended Complaint. Klauber then amended its complaint and filed, but did not serve its Second Amended Complaint which alleged breach of contract. In response to the Second Amended Complaint, Bon-Ton again pointed out to Klauber substantive deficiencies in the claims asserted in the Second Amended Complaint. Recognizing the deficiencies in its Second Amended Complaint, Klauber once again withdrew the Second Amended Complaint and filed and served its Third Amended Complain.

Obviously recognizing that the payment obligations under the Settlement Agreement ran only to Russell-Newman, Klauber concocted baseless claims of copyright infringement and Lanham Act violations against Bon-Ton. Because these claims were without any legal or factual basis, Bon-Ton filed a motion to dismiss Klauber's Third Amended Complaint. On March 26, 2013, this Court issued its Memorandum Opinion and Order ("Order"), rejecting all of Klauber's claims and granting Bon-Ton's Motion to Dismiss in its entirety.

2

**ARGUMENT**

**I.**

**BON-TON IS ENTITLED TO RECOVER ITS
ATTORNEYS' FEES AND COSTS**

The procedural history of this action is proof perfect that Klauber was simply in search of a deep pocket to pay for the apparently bad deal it struck with Russell-Newman. As evidenced by its initial suit against Russell-Newman *only*, Klauber was fully aware that that it had no cause of action for breach of the Settlement Agreement against Bon-Ton. After it was unable to serve Russell-Newman, Klauber turned its attention to Bon-Ton, and filed its First Amended Complaint. Even after the Court advised Klauber that its breach of contract claim against Bon-Ton was meritless, Klauber insisted on plowing ahead with its breach of contract claim against Bon-Ton. Klauber filed, but did not serve a Second Amended Complaint, in which Klauber first concocted its "joint and several" theory of liability.

After Bon-Ton pointed out the weakness of Klauber's Second Amended Complaint, Klauber yet again amended its complaint and in the Third Amended Complaint added its bogus copyright infringement and Lanham Act claims.

**A.    Under The Copyright Act, Bon-Ton Is Entitled to Recover Its Attorneys'
       Fees and Costs**

The copyright claims asserted in Klauber's Third Amended Complaint were completely meritless and a desperate attempt by Klauber to get payment from Bon-Ton. Prior to issuing its Order granting Bon-Ton's Motion to Dismiss, the Court requested that it be provided physical samples of the allegedly infringing undergarments and the lace patterns which Klauber alleged had been infringed. Klauber provided the Court with the physical lace patterns and the allegedly infringing underwear.

3

The Court determined that the less stringent "ordinary observer" standard, instead of the "more discerning" standard should be applied to this case. (Order, p.12) Even applying the "ordinary observer" standard, the Court found that "given the differences in the design, this Court cannot find that the allegedly infringing design is 'substantially similar' to Klauber's 7088 and 7089 designs[,]" and dismissed Klauber's copyright claims against Bon-Ton (Order, pp. 14-15). As the prevailing party, and in light of Klauber's meritless copyright claims, brought in a desperate hope that it would somehow be able to extract some payment from Bon-Ton, Bon-Ton is entitled to recover its attorney's fees and costs incurred in connection with its defense of this action.

Section 505 of the Copyright Act, 17 U.S.C. § 505, authorizes the award of attorneys' fees to the prevailing party in copyright infringement case:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorneys' fees to the prevailing party as part of the cost.

The decision to award attorneys' fees is squarely within the Court's discretion. *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995); *Hudson v. Universal Studios, Inc.*, 2009 U.S.Dist. LEXIS 18729 (S.D.N.Y. March 4, 2009). Nonetheless, the general view is that an award of attorneys' fees to the prevailing party in a copyright action is the rule rather than the exception and attorneys' fees should be awarded routinely. *See Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290 (S.D.N.Y. 2008), *aff'd*, 2009 U.S. App. LEXIS 8540 (2d Cir. Apr. 21, 2009), *Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, 2000 U.S. Dist. LEXIS 4549 (S.D.N.Y. April 11, 2000); B*ranch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359 (S.D.N.Y. 1991).

4

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court made clear that "prevailing plaintiffs and prevailing defendants are to be treated alike" in determining an award of attorneys' fees. *Id.* at 534. In *Forgerty* the Supreme Court set forth "several nonexclusive factors that courts may consider in making awards of attorneys' fees to any prevailing party." *Id*. at 535 n. 19. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*; *Knitwaves*, 71 F.3d at 1011.

There is no doubt here that Klauber's motivation behind asserting its bogus copyright infringement claims was to extort money from Bon-Ton. It was clear from the start that the breach of contract claims Klauber asserted against Bon-Ton had no traction. Therefore, Klauber made up the copyright infringement (and Lanham Act) claims in an attempt to extract payment from Klauber. In the Prior Litigation, Bon-Ton opted to settle early in the litigation before an answer to the complaint was even filed. Having done so, Klauber saw Bon-Ton as an easy target, and came back for a second bite. However, this time around, Bon-Ton chose to defend the allegations against it and filed a Motion to Dismiss, which the Court granted in its entirety. In order to deter Klauber from filing these meritless and vexatious suits against Bon-Ton and other defendants, the Court should order Klauber to pay Bon-Ton its attorneys' fees and costs in the sum of $127,828.45.

**B.    Bon-Ton Is Entitled To Attorneys' Fees and Costs Under the Lanham Act**

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." *15 U.S.C. § 1117(a)*. The attorneys' fee provision of the Lanham Act protects not only plaintiffs, but extends to defendants as well because the attorneys' fee provision "endeavor[s] to afford protection to defendants 'against unfounded suits brought by trademark owners for harassment and the like.' " *IMAF, S.p.A v. J.C. Penny Co. Inc.*, 210 F.

5

Supp. 96, 98. (S.D.N.Y 2002) *Id.* (quoting *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521, 524 (D.C.Cir.1985) (quoting S.Rep. No. 1400, 93d Cong., 2d Sess. 5, 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7136)).  Although the Lanham Act does not expressly define what constitutes an "exceptional" case, courts have interpreted this term to include cases brought in bad faith. *See Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 77 (2d Cir. 1986) (affirming award of attorneys' fees to defendant where suit was brought in bad faith as a competitive ploy);  *IMAF*, 210 F. Supp. at 98 (awarding fees to a defendant who " was forced to incur expenses and devote time to defend against a lawsuit that … utterly lacked a solid legal foundation").

Here, Klauber didn't even have standing to assert the claims it asserted.  Recognizing the weakness in its breach of contract claim, Klauber tacked on specious Lanham Act and copyright infringement claims, which the Court summarily dismissed.  Accordingly, this is an "exceptional" case where the award of attorneys' fees is clearly warranted.

> C. **Bon-Ton Is Entitled To Attorneys' Fees and Costs For The Breach of Contract Claims**

Attorneys' fees may be awarded in cases where the claims asserted are "entirely without color and [have] been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977); see also *Nemeroff v. Abelson*, 620 F.2d 339, 349 (2d Cir. 1980).  As the Court pointed out in the very first sentence of its analysis, "the plain language of the Settlement Agreement specifically assigns separate obligations to Russell-Newman and Bon-Ton."  (Order, p.5)  The Court further agreed with Bon-Ton that "the Settlement Agreement plainly does not impose any obligation on Bon-Ton to make any payments to Klauber."  (Id.)

6

From its inception, this action was brought by Klauber to recover sums allegedly owed to it by Russell-Newman. Originally, Klauber brought a lawsuit solely against Russell-Newman, presumably because it recognized that Bon-Ton had no payment obligation under the Settlement Agreement. However, after Klauber was unable to serve Russell-Newman, it turned its sights towards Bon-Ton, and amended its complaint to add Bon-Ton as a defendant. In the First Amended Complaint, Bon-Ton sought to resurrect the claims that it had dismissed with prejudice in the Prior Litigation. Pursuant to the individual practice rules of Hon. Paul G. Gardephe, Bon-Ton requested leave to file a motion to dismiss and submitted a pre-motion letter pointing out the various substantive deficiencies in Klauber's First Amended Complaint. During the pre-motion conference, which was held in December 2011, this Court advised Klauber that its First Amended Complaint would not withstand a motion to dismiss, and granted Klauber leave to amend its complaint.

Following the pre-motion conference, on December 21, 2011, Klauber filed its Second Amended Complaint claiming that Bon-Ton was liable under the Settlement Agreement under a theory of joint and several liability. The Second Amended Complaint was never served upon Bon-Ton.

Recognizing the speciousness of its Second Amended Complaint, Klauber withdrew its Second Amended Complaint and filed and served its Third Amended Complaint, wherein, it tried to "beef-up" its breach of contract claims with equally specious copyright infringement and Lanham Act claims. The Court granted Bon-Ton leave to file the Motion to Dismiss, and ultimately agreed with Bon-Ton that all of Klauber's claims were meritless and dismissed the action in its entirety.

In sum, Klauber filed three (3) iterations of the complaint against Bon-Ton. Each and every amended complaint filed by Klauber failed to plead any actionable wrong on Bon-Ton's part, but each required Bon-Ton to expend time, money and resources to defend. Indeed, Bon-Ton insisted upon pursuing its breach of contract claim against Bon-Ton even after the Court advised it of the weakness of its claim. Backed into a corner, instead of acknowledging defeat, Klauber made up a joint and several theory of liability where no such liability existed under the plain reading of the Settlement Agreement, and added copyright infringement and Lanham Act claims, which Bon-Ton was forced to defend.

Klauber's actions in continuing its lawsuit even after it was clear that it had no viable claim against Bon-Ton caused Bon-Ton to incur significant legal fees in defending against Klauber's frivolous and ill-conceived claims. Accordingly, Bon-Ton respectfully requests that the Court award it its reasonable attorneys' fees and costs in the amount of $127,828.45.

## II.

### THE ATTORNEYS' FEES SOUGHT ARE REASONABLE.

The Second Circuit has set forth methodology for courts to determine whether attorneys' fees sought are reasonable. In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), the Second Circuit held:

> [the district court should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate. The reasonable hourly rate is a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district

8

>court should then use that reasonable hourly rate to calculate what
>can properly be termed the "presumptively reasonable fee."

The twelve "*Johnson* factors" are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

    A.    **The Hourly Rates Charged by Duane Morris LLP in This Matter are Reasonable**

Attached as Exhibit A to the affirmation of Suzan Jo are the monthly invoice that were sent to Bon-Ton for services rendered in this matter. The invoices contemporaneously sets forth the (i) date that services were provided, (ii) the timekeeper who provided the services; (iii) a description of the services provided; (iv) the amount of time spent providing such services; and (v) the total amount of fees billed for the service.

The hourly billing rates at Duane Morris LLP are consistent with those charged by other New York law firms of comparable size, expertise, and experience. Vanessa Hew, a partner at Duane Morris LLP billed at an average rate of $482.50 per hour for the work she performed in connection with this matter. (See Suzan Jo Declaration, ¶ 3, Ex. A) Suzan Jo, who is a special counsel at Duane Morris LLP, billed at an average of rate of $490.00 per hour. (See id.) Terry Parker, who is a fourth year associate working on this case, billed at average hourly fees of $390.00 per hour. Mary Pennisi, a second year associate, and Sarah Peyronnel, also a second

year associate, respectively billed at an average rate of $290.00 and $175.00 per hour.  (See id.) Senior paralegals, Dan Doran, and Onika McLean billed at a rate of $285 per hour; paralegal Inez Vega billed at $265 per hour; and paralegal Edwin Grullon billed at $135 per hour.  (See id.)

Bon-Ton respectfully submits that these fees are reasonable in this district given the size of Duane Morris as one of the 100 largest law firms in the U.S., the experience of the attorneys and the types of legal issues presented in this case.  *See, e.g., Louis Vuitton Malletier*, 2007 U.S. Dist. Lexis 31632, at * 11 (S.D.N.Y. April 24, 2007) (finding $700 per hour for a senior partner, $400 for an associate with five years of experience reasonable in trademark litigation). Moreover, Duane Morris provides legal services to Bon-Ton in various matters, and the attorneys' fees sought here are consistent with the attorneys' fees Duane Morris customarily charges Bon-Ton.

      **B.**    **The Number of Hours Expended by Counsel for Bon-Ton on This Matter is Reasonable**

"The court's role is not to determine whether the number of hours worked by [the movant's] attorneys represents the most efficient use of resources, but rather whether the number is reasonable." *In re Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil*, 160 F. Supp. 2d 613, 616 (S.D.N.Y. 2001).  Duane Morris billed a total of 304.1 hours in the defense of this matter.  The hours were expended analyzing and defending against the three different versions of the complaint that Klauber filed against Bon-Ton, numerous correspondence with the counsel for Klauber related to the various amendments to the complaint; analysis of the alleged infringing underwear and the original lace patterns; and finally drafting the Motion to Dismiss and related briefs.  Given the complexity of the claims and the numerous amendments to the complaint, the number of hours expended is reasonable.

C.     **The Costs Sought By Bon-Ton are Reasonable**

Bon-Ton seeks a total of $269.45 in costs associated with the defense of this matter. These costs are also listed on the invoices attached as Exhibit A to Suzan Jo's Declaration. The costs were incurred in connection with court docket search services and messenger fees, and are reasonable and necessary costs.

Defendant The Bon-Ton Stores, Inc. respectfully requests that the Court award it its attorneys' fees and costs incurred in connection with the defense of this action.

| | |
|---|---|
| Dated:  New York, NY<br>April 9, 2013 | DUANE MORRIS LLP<br><br>By: /s/ Suzan Jo<br>       Vanessa C. Hew<br>       vchew@duanemorris.com<br>       Suzan Jo<br>       sjo@duanaemorris.com<br>       Terry Parker<br>       tparker@duanemorris.com<br>       1540 Broadway<br>       New York, NY 10036<br>       (212) 692-1000<br><br>*Counsel for Defendant*<br>*The Bon-Ton Stores, Inc.* |

## CERTIFICATE OF SERVICE

      I hereby certify that I caused a copy of the foregoing Defendant's Memorandum of Law In Support of Its Motion For Attorneys' Fees to be served by electronic mail this 9th day of April, 2013 on the following pursuant to the parties' agreement:

Philip Gottfried, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
E-mail: pgottfried@arelaw.com

/s/ Suzan Jo
_____